743 F.2d 739
 35 Fair Empl.Prac.Cas. 1163,
36 Empl. Prac. Dec. P 35,068, 39 Fed.R.Serv.2d 624
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant
and Cross-Appellee,
v.
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, now Burlington
Northern Railroad Company, Defendant-Appellee and
Cross-Appellant.
 Nos. 83-1072, 83-1127.
 United States Court of Appeals,
Tenth Circuit.
 July 13, 1984.
 
 Lorraine L. Davis, E.E.O.C., Washington, D.C. (David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vincent J. Blackwood and Vella M. Fink, Asst. Gen. Counsels, and Susan Buckingham Reilly, Atty., E.E.O.C., Washington, D.C., with her on the briefs), for plaintiff-appellant and cross-appellee.
 Harvey L. Harmon, Sr., of Kornfeld, Satterfield, McMillin, Harmon, Phillips & Upp, Oklahoma City, Okl. (Dennis T. Rathmann, Asst. Gen. Counsel, Burlington Northern R. Co., St. Louis, Mo., of counsel, with him on the brief), for defendant-appellee and cross-appellant.
 Before SETH, Chief Judge, and BREITENSTEIN and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission (EEOC) brought this action against the St. Louis-San Francisco Railway Company (now the Burlington Northern Railroad Company) alleging that the company's minimum height requirement for the position of switchman-brakeman discriminated against women,[1] in violation of section 706 of Title VII of the Civil Rights Act of 1964. 42 U.S.C. Sec. 2000e-5 (1976).[2] The trial court restricted the suit to representation of a single complainant, refusing to allow the EEOC to seek relief on behalf of all persons affected. After trial to the court, the court entered judgment against the EEOC and awarded in excess of $83,000 in attorney's fees and expenses to the defendant. Both parties appeal, presenting three main issues:
 
 
 2
 1. Whether the trial court erred in holding that the EEOC did not prove that a 5'7" minimum height requirement unlawfully discriminated against women job applicants.
 
 
 3
 2. Whether the district court erred in refusing to allow the EEOC to seek relief on behalf of a class of females who had been denied employment because of the restriction.
 
 
 4
 3. Whether the award of attorney's fees was proper.
 
 I. HEIGHT REQUIREMENT
 
 5
 This action arose out of a charge filed with the EEOC by Ms. Deborah Bauman. Ms. Bauman's charge alleged that the 5'7" height requirement, which she did not meet, discriminated against women.[3] At trial, the court held that the EEOC failed to carry its initial burden of establishing a prima facie case of discrimination, and that even if the EEOC did establish a prima facie case, the company provided sufficient rebuttal. The EEOC appeals, contending that the court applied the wrong standard.
 
 
 6
 The trial court set out the four elements of a prima facie case as articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):
 
 
 7
 1. that the plaintiff belongs to a protected minority;
 
 
 8
 2. that the plaintiff applied for and was qualified for a job for which the employer was seeking applicants;
 
 
 9
 3. that, despite the plaintiff's qualification, she was rejected; and
 
 
 10
 4. that, after her rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.
 
 
 11
 Record, Deferred Appendix vol. 1, at 129-30; McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The McDonnell Douglas elements apply in disparate treatment cases, where an employee alleges that he or she has been treated less favorable than his or her peers because of gender, race, etc.
 
 
 12
 As the trial court correctly noted, these factors are irrelevant in disparate impact cases, where the plaintiff alleges that a facially neutral test or employment criteria which disproportionately disqualifies a protected class is not job related. To establish a prima facie case of employment discrimination in a disparate impact case,
 
 
 13
 a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern. Once it is thus shown that the employment standards are discriminatory in effect, the employer must meet "the burden of showing that any given requirement [has] ... a manifest relationship to the employment in question." If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also "serve the employer's legitimate interest in 'efficient and trustworthy workmanship.' "
 
 
 14
 Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726-2727, 53 L.Ed.2d 786 (1977) (citations omitted).
 
 
 15
 Dothard involved height and weight requirements for the position of prison guard in Alabama. In Dothard, the Court struck down the height and weight requirements because statistically they effected a disparity in the rate of hiring between the sexes, and the employer could not justify their use by demonstrating that they had a manifest relationship to the employment in question. The Court rejected an argument that a showing of disproportionate impact on women based on generalized national statistics was insufficient to establish a prima facie case. In rejecting this argument, the Court noted that there is no requirement that the statistical showing be based on an analysis of actual applicants. Indeed, actual applications received may not provide an adequate basis for statistical analysis because they may not reflect the actual potential applicant pool. Many otherwise qualified potential applicants might not apply because of a self-recognized inability to meet the discriminatory requirements. Id. at 329-30, 97 S.Ct. at 2726-27.
 
 
 16
 After setting out the different standards for proof of a prima facie case in disparate impact and disparate treatment cases, the trial court here apparently applied the standard for disparate treatment cases. The court stated:
 
 
 17
 [A]fter carefully reviewing the evidence and applying the tests for Title VII disparate impact cases [the Court] determines that the Plaintiff did not prove a prima facie case of discrimination. Plaintiff never established that Deborah Bauman was qualified for the job as switchman-brakeman. Because Plaintiff did not establish a prima facie case, the Court need not look further to the challenged test or requirement. However, if the Court had reached the issue, there was sufficient evidence to show that at the time the employer believed the requirement bore a manifest relation to the employment in question.
 
 
 18
 Record, Deferred Appendix vol. 1, at 131. Although the court correctly stated that the disparate impact test was the proper test, the factor of whether Ms. Bauman was qualified for the job is clearly an element of the disparate treatment test, not the disparate impact test.
 
 
 19
 Further, not only did the court apply the wrong test, it ignored its own finding that, statistically, the majority of females, but only a small percentage of males, in the United States would not meet the height requirement. See Record, Deferred Appendix vol. 1, at 127. This is precisely the type of evidence which Dothard found was sufficient to establish a prima facie case of disparate impact discrimination.
 
 
 20
 After carefully reviewing the record, we find that the district court's conclusion that even if the EEOC established a prima facie case, the company rebutted it, is doubtful at best. Further, the court apparently failed to consider whether the EEOC had shown that alternative selection devices would have effectively served the company's legitimate interests. This is a particularly relevant consideration in light of evidence in the record that the company dropped its height requirement and substituted a field test. Record, Deferred Appendix vol. 1, at 127; Deferred Appendix vol. 2, at 423. The trial court's doubtful conclusions, combined with its application of the wrong test, force us to conclude that the entire record is so affected with error that the finding that the company sufficiently rebutted any prima facie case which might have been proved is clearly erroneous.
 
 II. APPLICABILITY OF FED.R.CIV.P. 23
 
 21
 The EEOC sought to investigate and litigate this suit on behalf of a class of females adversely affected by the company's height requirement. The district court, however, restricted the suit to Ms. Bauman's claim because it found that the EEOC is limited to seeking individual relief under section 706 of Title VII, 42 U.S.C. Sec. 2000e-5 (1976). The court further found that even if the EEOC were entitled to seek class-wide relief under section 706, such relief would be unavailable here because the EEOC had not identified any women who had been discriminated against other than Ms. Bauman, and the allegations of class discrimination in the complaint were insufficient to meet the requirements of Fed.R.Civ.P. 23. Record, Deferred Appendix vol. 1, at 33-40. Thus, the court refused to allow the EEOC discovery on class action issues.
 
 
 22
 In concluding that the EEOC is limited to seeking individual, and not class-wide, relief under section 706, the district court relied on EEOC v. Continental Oil Co., 548 F.2d 884 (10th Cir.1977). The district court quoted language from Continental Oil wherein this court stated that the thrust of section 706 is vindication of individual instances of discrimination, as compared to the aim of section 707, which is eradication of broad based systematic discrimination. Id. at 887. However, the issue in Continental Oil was whether section 706 authorized the EEOC to file suit predicated upon the charges of two individuals, each of whom had previously filed an action in vindication of his charge of employment discrimination. Continental Oil did not address the issue of whether the EEOC could seek class-wide relief under section 706. In fact, the EEOC did not even request class certification under Fed.R.Civ.P. 23 in Continental Oil.
 
 
 23
 Thus, the issue of whether the EEOC could seek relief on behalf of all females who had been discriminated against by the company's minimum height requirement, and if so, what relationship Fed.R.Civ.P. 23 bore to the action, was at the time a question of first impression in this circuit. As the trial court, and later the Supreme Court, noted, the federal courts were divided on the issue. Record, Deferred Appendix vol. 1, at 38; General Telephone Co. v. EEOC, 446 U.S. 318, 320, 100 S.Ct. 1698, 1701, 64 L.Ed.2d 319 (1980) (General Telephone ). The issue has since been squarely decided by the Supreme Court in General Telephone, and we therefore follow that decision.
 
 
 24
 In General Telephone, the Supreme Court held that the EEOC may seek class-wide relief without being certified as the class representative under Fed.R.Civ.P. 23. See id. at 323, 100 S.Ct. at 1702. Section 706 authorizes the EEOC to bring suit in its own name for the purpose of securing relief for a group of aggrieved individuals. This "authority ... is in no way dependent upon Rule 23, and the rule has no applicability to a Sec. 706 suit." Id. at 324, 100 S.Ct. at 1703.
 
 
 25
 As the Court noted in General Telephone, Title VII was amended in 1972 for the purpose of securing more effective enforcement of the statute. EEOC's role of informal conciliation and persuasion in order to secure voluntary compliance, under the original statute, had proved to be ineffective. "Congress became convinced ... that the 'failure to grant EEOC meaningful enforcement powers [had] proven to be a major flaw in the operation of Title VII.' " Id. at 325, 100 S.Ct. at 1704 (quoting S.Rep. No. 92-415, p. 4 (1971)). Congress, therefore, gave the EEOC broad enforcement powers by authorizing it to bring civil actions in federal district court against private employers reasonably suspected of violating Title VII. The new enforcement power was intended not only to bring about more effective private enforcement, but to vindicate the public interest. Id. at 326, 333, 100 S.Ct. at 1704, 1707.
 
 
 26
 Thus, Congress has focused in the EEOC the power to investigate and bring actions aimed at seeking a remedy on behalf of all affected persons. The EEOC has this power without regard to the requirements of class action suits. Although, in the instant action, the EEOC's requests for discovery were made in terms of Rule 23, we believe they fit within the scope of General Telephone. The district court cut the EEOC off from its investigative function by preventing the EEOC from discovering other possible victims of the company's discriminatory height requirement. Even though the EEOC's requests may have been burdensome, we do not find that they were an abuse of process, particularly in light of the EEOC's broad investigative and enforcement authority to pursue remedies on behalf of all affected persons. At the discovery stage, the EEOC should be allowed to seek proof of the effect on other applicants or on potential applicants. This is especially true here, where the height requirement itself had a discriminatory impact. Our conclusions are not changed by the fact that the company dropped the discriminatory requirement. Even though the EEOC was not entitled to injunctive relief after the company abandoned the requirement, it still had authority to seek backpay relief on behalf of the injured.
 
 
 27
 We remand this case for a new trial wherein the EEOC may re-present its discovery motions. Questions of further discovery are to be reviewed in light of the standards set out above.
 
 III. ATTORNEY'S FEES
 
 28
 In light of our holding with respect to the EEOC's proof of a prima facie case, and the district court's refusal to allow the EEOC to seek relief on behalf of all persons adversely affected by the company's minimum height requirement, we must reverse the award of attorney's fees to the company.
 
 
 29
 Title 42 U.S.C. Sec. 2000e-5(k) grants the district court discretion to award reasonable attorney's fees to the prevailing party. The Supreme Court has clearly defined the standard for awarding attorneys fees to a prevailing defendant in Title VII actions. In exercising its discretion, a court may award attorney's fees to a prevailing defendant if the plaintiff's claim was brought in bad faith or was frivolous, unreasonable, or without foundation. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); see also Montgomery v. Yellow Freight System, Inc., 671 F.2d 412, 414 (10th Cir.1982). While the district court here recited the proper standard, we find that it abused its discretion by awarding attorney's fees. The EEOC clearly had a right to seek backpay for the specific claimant involved. This right was in no way dependent on whether the claimant sought reinstatement, nor on whether the company had dropped the discriminatory requirement. Further, the state of the law as to whether the EEOC had the authority to seek relief on behalf of others affected was not settled and has since been settled in favor of the EEOC's position. Thus, the EEOC's action was not remotely frivolous, unreasonable or without foundation.
 
 
 30
 The parties also raise issues regarding the propriety of awarding interest on the attorney's fee award and whether the amount of the award was proper. These issues are now moot.
 
 
 31
 Reversed and remanded for a new trial.
 
 
 
 [1]
 The EEOC also alleged that the height requirement discriminated against hispanics. The EEOC further alleged that the railroad's requirement of a high school diploma for the same position unlawfully discriminated against blacks. These claims were dismissed and the EEOC does not appeal their dismissal on the merits but does appeal the district court's award of attorney's fees to defendant calculated in part on these claims
 
 
 [2]
 Section 706 of Title VII provides in pertinent part:
 If within thirty days after a charge is filed with the Commission ..., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.... The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission .... If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.
 42 U.S.C. Sec. 2000e-5(f)(1) (1976).
 
 
 [3]
 The company dropped the height requirement in 1975. Record, Deferred Appendix vol. 1, at 127