Carlos A. LASSO, Plaintiff-Appellant,

v.

WOODMEN OF the WORLD LIFE INSURANCE COMPANY, INC., Defendant-Appellee.

No. 81–1458.

United States Court of Appeals, Tenth Circuit.

Aug. 24, 1984.

Carl J. Hartmann, III, Santa Fe, N.M., and Judd S. Conway of Conway & Associates, Albuquerque, N.M. (Michael R. Gernsheimer, Granat, Gernsheimer & Hart-mann, Santa Fe, N.M., was also on brief), for plaintiff-appellant.

John M. Kulikowski, Keleher & McLeod, Albuquerque, N.M. (Robert C. Conklin, Albuquerque, N.M., was also on brief), for defendant-appellee.

Before HOLLOWAY and DOYLE, Circuit Judges, and BROWN, District Judge.*

HOLLOWAY, Circuit Judge.

The plaintiff, Carlos Lasso, brought this Title VII action, 42 U.S.C. § 2000e *et seq.*, against defendant Woodmen of the World Life Insurance Society. Plaintiff alleged that defendant failed to promote him because of his Hispanic heritage and demoted him for the same reason. The trial court rejected both arguments, and entered judgment dismissing the cause on the merits. Plaintiff appeals.

I

*The Facts*

In 1971 plaintiff began working for defendant as a life insurance salesman. In his first year, plaintiff became the "number one producer" in the State of New Mexico, and he was the most successful producer in New Mexico from 1971–73. II R.38, 42. Defendant desired that its employees be involved in fraternal activities, in addition to selling insurance. Plaintiff was highly successful in this area as well. He organized and directed one of the defendant's more active and successful fraternal lodges in New Mexico. II R.53–57, III R.257.

In 1973 defendant promoted plaintiff to an area manager position. In addition to selling insurance, an area manager's responsibilities include recruiting, training and supervising a sales force in his area. II R.58. Plaintiff proved to be a successful area manager. He doubled his area's production in one year, II R.69, and from 1974 through 1977 had the highest production in the state. III R.257–58. Moreover, two of

---

* The Honorable Wesley E. Brown, United States District Judge of the District of Kansas, sitting by designation.

plaintiff's recruits were the first million dollar producers in New Mexico. II R.66.

Plaintiff aspired to be state manager, but he did not learn that the position was open in 1977 until a replacement for the current state manager was announced. II R.105–06,108. Plaintiff discovered that he had been passed over for the state manager position on November 17, 1977, at a company social gathering. At this gathering, an announcement was made that the current state manager was being transferred, and his replacement was to be a caucasion—Grant Doney. II R.105–06.

Plaintiff believed that defendant chose not to promote him because of his Hispanic national origin and brought suit. The district court found that "Grant Doney had not been with [defendant] as long as [plaintiff] and did not have as good a record as an area manager as [plaintiff]." Trial Court Opinion at 4. At trial plaintiff introduced "statistical evidence ... regarding the lack of Hispanics in management." *Id.* at 3. The district court found that this, coupled with plaintiff's qualifications and national origin, made out a prima facie case of disparate treatment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Trial Court Opinion at 3–4.

However, the district court concluded that plaintiff had failed to carry his burden of proof. The court reasoned that defendant had "articulated non-discriminatory reasons for not choosing [plaintiff]." Trial Court Opinion at 4. Specifically, the court found that defendant believed that Doney had more management experience and that his personality and leadership skills made him a more desirable choice than plaintiff. *Id.* Because plaintiff did not demonstrate that these reasons were a mere pretext for discrimination, he failed to prove a Title VII violation. *Id.*

The court further found that defendant's refusal to permit plaintiff to continue as area manager after Doney's promotion did not violate Title VII. The court reasoned that plaintiff had not proven a prima facie case on this claim, and even if he had,

defendant's reasons for demoting plaintiff were legitimate and non-discriminatory. The court, therefore, dismissed the action on the merits. *Id.* at 5.

On appeal, plaintiff does not challenge the trial court's ruling on the disparate treatment issue. Rather, he argues that the trial court failed to make findings on his disparate impact theory. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Plaintiff reasons that the trial court's findings are therefore insufficient under Rule 52. Fed.R.Civ.P. *See* Brief for the Appellant at 10 ("It is from [the court's disregard of the disparate impact theory] that the appellant here appeals."). Plaintiff seeks to have this case "reversed on the basis of his having shown disparate impact and the employer's having failed to prove business necessity; or remanded for consideration of his second cause of action—disparate impact." *Id.* at 11–12.

## II

At the outset we will note the three basic issues presented by the contentions of the parties:

a. Plaintiff asserts, and defendant denies, that plaintiff urged a disparate impact theory in the trial court.

b. Plaintiff asserts, and defendant denies, that a disparate impact claim may be maintained in a private, non-class action. Defendant argues that the plaintiff is attempting to "force the factual circumstances of this case into the non-private, class action analysis set forth in *Griggs,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)," and defendant criticizes plaintiff's position in that "[w]ithout exception, the cases cited by Lasso were brought as non-private, class actions." Brief for the Appellee 12–13.

c. Plaintiff argues, and defendant denies, that the trial court erred in not making findings and conclusions dealing with the disparate impact claim and statistical and other evidence introduced in support of that claim.

### A.

■ We are persuaded that, although the pleadings and statements of plaintiff's claims in the pretrial order do not with clarity emphasize a "disparate impact" claim, the essence of that theory was presented. In the pretrial order the general nature of plaintiff's claims included statements that defendant "discriminatorily failed and refused to hire the plaintiff as state manager because of his national origin." It also said that plaintiff "further contends that Defendant has intentionally engaged in discriminatory action against Hispanics and that they have been denied opportunities equal to those provided to Anglos,"[1] and plaintiff prayed for an injunction "prohibiting the Defendant from any future discriminatory employment practices because of national origin and that the Defendant be required to institute and carry out policies which provide equal employment opportunities for Hispanics." The pretrial order further noted as a contested fact question "[w]hether or not the Defendant has engaged in discriminatory practices in the hiring and employment of Hispanics." I R.12–13.

■ We also consider the complaint in conjunction with the general statement of claims noted in the pretrial order. We must agree with plaintiff that the effect of paragraphs 6 and 7 is to allege both disparate treatment and disparate impact claims.[2] In addition we note that two days before trial, plaintiff's first set of requested findings of fact and conclusions of law was filed with the trial court. I R.27–34. Those proposed findings and conclusions included considerable statistical data, cited from answers to interrogatories, showing, inter alia, that there was only one Hispanic surnamed state manager of defendant's company since 1963 and that out of 55 state managers since 1975, none were Hispanic surnamed persons. I R.29–30. One proposed finding, to be based on Lasso's testimony, was that there is a substantial disparity between the number of Hispanics working for defendant and those holding high level management positions. *Id.* at 31. Proposed conclusion of law 37 stated that the failure of defendant to hire Hispanics in high level management positions was not "based upon some manifest relationship to the employment here in ques-

---

1. The allegation of "discriminatory action" does pertain to disparate treatment claims and disparate impact claims do not require such intentional wrongs. *Williams v. Colorado Springs, Colorado, School District*, 641 F.2d 835, 839 (10th Cir.1981). We do not feel, however, that this addition of the allegation of intent removes all of the charges from the realm of disparate impact claims.

   While intentional discrimination need not be shown in disparate impact cases, intent is not irrelevant; after the employer presents his defense attempting to show that the challenged facially neutral practice has a manifest relationship to the employment in question, "the plaintiff may prevail if he shows that *the employer was using the practice as a mere pretext for discrimination.*" *Connecticut v. Teal*, 457 U.S. 440, 447, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982) (emphasis added). As in *Hung Ping Wang v. Hoffman*, 694 F.2d 1146, 1147 (9th Cir.1982), the instant case "is both a disparate impact and a disparate treatment case under Title VII." (case remanded for reconsideration of disparate impact claim where plaintiff claimed predominantly subjective criteria for promotions in government jobs, with inadequate objective guidelines, permitted discriminatory impact on minority groups).

2. Paragraphs 6 and 7 of the complaint read as follows:

   6. This suit is based on the charge filed by Plaintiff with the Equal Employment Opportunity Commission and the Commission having found reasonable cause to believe that the Defendant had discriminatorily failed and refused to hire Carlos A. Lasso as District Manager because of his national origin. This practice, which defendant has intentionally engaged in [sic] its New Mexico facilities, discriminates against Hispanics on the basis of their national origin in violation of Section 703 of Title VII, 42 U.S.C. Section 2000e–2. This practice includes, but is not limited to, the following:

   A. Maintaining policies and practices with respect to hiring, specifically, in failing to hire Plaintiff as a District Manager. These policies unlawfully operate to deny Hispanics opportunities equal to those provided whites.

   7. The effect of the policies and practices complained of above has been to deprive Hispanics of equal employment opportunities and otherwise adversely affect their status as employees because of their national origin. I R. 1–2.

tion and *is not based upon any legitimate business necessity,"* *id.* at 32 (emphasis added)—the latter point being directly relevant to a disparate impact theory. When disparate impact claims are under consideration, "[t]he touchstone is business necessity." *Griggs v. Duke Power Co., supra,* 401 U.S. at 431, 91 S.Ct. at 853; *Williams v. Colorado Springs, Colorado, School District, supra,* 641 F.2d at 842 (standard applicable to disparate impact claims is "the more exacting 'business necessity' standard established in *Griggs* ").

In sum we must agree that plaintiff did present the disparate impact theory in the trial court. *See Hung Ping Wang v. Hoffman, supra,* 694 F.2d at 1148–49.

### B.

■ We are not persuaded by defendant's argument that a disparate impact claim may not be asserted in a private, non-class action. We are convinced that a plaintiff like Lasso may assert such a Title VII claim in a case like this.

In *Rule v. International Association of Bridge, Structural and Ornamental Ironworkers,* 568 F.2d 558, 566 (8th Cir. 1978), a Title VII class suit was brought but was treated at trial as one involving individual claims. The Eighth Circuit held that the district court applied the wrong standard of proof from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), instead of that from *Griggs,* which was proper for a disparate impact case. The court of appeals stated that "[w]hen such a challenge is made, in either an individual suit or a class action, the claim should be judged according to the standards set forth in *Griggs.*" *Rule, supra,* 568 F.2d at 566. Moreover in *Connecticut v. Teal,* 457 U.S. 440, 455–56, 102 S.Ct. 2525, 2535–36, 73 L.Ed.2d 130 (1982), the Supreme Court stated that "[e]very *individual* employee is protected against both discriminatory treatment and 'practices that are fair in form, but discriminatory in operation.' " (emphasis in original) (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28

L.Ed.2d 158 (1971)). *See also* 3 A. Larson & L. Larson, *Employment Discrimination* § 80.00 (1984) (discussing problems that arise in deciding upon relief in individual disparate impact cases).

In sum, we must reject defendant's contention and we hold instead that an individual plaintiff, like Lasso, may maintain a disparate impact claim.

### C.

In light of our conclusion that plaintiff did assert a disparate impact claim in the trial court as well as a disparate treatment claim, *see* Part II A, *supra,* and the evidence offered which tended to support such a disparate impact claim, we must agree that the trial court's findings and conclusions are deficient.

Defendant argues that the court properly weighed the statistical evidence; that the evidence was rather shallow and inconclusive, and came from discovery from defendant's responses to interrogatories; that no expert witness was produced to analyze the statistical data and no evidence on population figures was introduced; and thus there was no error in the findings and conclusions in connection with the disparate impact claim. Brief for the Appellee 22.

We cannot agree. There was statistical evidence in some detail on the number of lower level Hispanics among the defendant's employees and the lack of high level Hispanic state managers, and on the subjective selection process. Among other things, evidence introduced by plaintiff included Lasso's testimony, relating information from defendant's responses to interrogatories, that defendant in 1977 had 43.75% Spanish people working for the company in the State of New Mexico. In 1978, 41% of the New Mexico work force of the company were Hispanics. He testified further that there has never been a Hispanic state manager for the company, which has operated in the State for perhaps some 25 years. II R.97–98.

Then with respect to standards used by defendant in the selection of state managers, there was the testimony of Mr. Watkins. He was the National Field Manager, a member of the Board, and a vice-president of defendant. III R.226. He summarized the factors considered by the company in the selection of State managers—leadership ability, getting along with the person's peers, and the person's experience background. He said that there had been one Hispanic state manager, Mr. Rozas in Arizona, who resigned about 1965. *Id.* at 232–34. Watkins was the person who recommended Doney for the State Manager's position in this instance.

It is true that the trial judge's findings and conclusions did discuss the statistical data. They stated that the "qualifications of Mr. Lasso, the national origin of Mr. Lasso and the statistical evidence offered at the trial regarding the lack of Hispanics in management give rise to an inference of an unlawful discriminatory act by the Society in choosing Grant Doney for the position of state manager. Mr. Lasso, therefore, established a *prima facie* case of disparate treatment because of his national origin." Trial Court Opinion at 4. Then following the *McDonnell Douglas Corp. v. Green* analysis, the judge found that defendant articulated non-discriminatory reasons for not choosing Mr. Lasso for state manager and that the "plaintiff did not carry his burden of proving that the reasons offered by the defendant were merely a pretext for discrimination." Trial Court Opinion at 4.

We must agree that the findings were deficient in not treating the disparate impact claim. There is no discussion in the court's opinion which can fairly be read as having considered that claim. The rejection of plaintiff's case gave no consideration to "the more exacting 'business necessity' standard established in *Griggs*" which is applied in judging a defense to a disparate impact claim. *Williams v. Colorado Springs, Colorado School District, supra,* 641 F.2d at 842; *see also EEOC v. St. Louis-San Francisco Railway Co., now*

*Burlington Northern Railroad Company,* 743 F.2d 739, 743 (10th Cir.1984). Without expressing any view as to the merits of the disparate impact claim or the findings and conclusions that should be made on it, we hold that the district court did err in not making findings and conclusions on that claim as required by Fed.R.Civ.P. 52(a).

### III

For these reasons we conclude that we must vacate the judgment and remand the case. The judgment is vacated and the case is remanded for further proceedings which the district court deems proper for disposition of the disparate impact claim, and for further findings and conclusions and a further judgment.