Diana L. COMINIELLO, Plaintiff,

v.

JOHN DEERE COMPANY, Defendant.

Civ. A. No. 87–C–349.

United States District Court,
D. Colorado.

May 5, 1988.

**760**

Glenn A. Bergmann, Lakewood, Colo., for plaintiff.

Peyton H. Moss, Ulrico S. Rosales, Davis, Graham & Stubbs, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff commenced this action alleging a claim of sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Jurisdiction is based on 28 U.S.C. § 1343.

On January 30, 1988, I granted the defendant's motion for summary judgment and dismissed the complaint and action.

Judgment was entered implementing my order on February 1, 1988. Plaintiff then filed a motion for reconsideration of my order. I granted that motion by minute order on February 29, 1988, and the following memorandum opinion and order addresses my reconsideration of my prior order.

These facts appear undisputed: Plaintiff was a long-term employee of the defendant. In the spring of 1986 the defendant announced a reduction in the number of salaried employees, accompanied by two prospective plans for qualified employees: First, a voluntary retirement plan, and second, a voluntary separation plan with severance benefits. Plaintiff elected to take the voluntary separation benefits, which included a year's salary, but later filed a sex discrimination claim with the Equal Employment Opportunity Commission ("EEOC"), and then filed this lawsuit. She alleges that she was forced to accept the voluntary separation offer because her job was being given to an unqualified male employee.

The complaint specifically alleges that: "8. In the process of a reduction in force by the Defendant, the plaintiff was removed from her position, for which she was well qualified, and was replaced by a male who was lesser qualified.

.     .     .     .     .

"9. The Defendant had a written policy related to the reduction in force which provided for the termination of certain classifications or functional groups. These terminations were to be based on 'length of employment.' Plaintiff was denied consideration for her length of employment or for consideration for employment in a position for which she was well qualified in 'complete goods' or in 'billing.'

.     .     .     .     .

"11. Said acts of discrimination were based on the sex of the plaintiff." (Complaint, at 2.)

In my order granting the defendant's summary judgment motion, I determined that summary judgment was proper because the plaintiff had failed to allege a prima facie case of disparate impact sex discrimination under Title VII. Defendant had argued that the complaint alleged a claim of "disparate treatment" discrimination, but that the plaintiff had failed to offer sufficient evidence in support of that claim to withstand a motion for summary judgment. In response, the plaintiff had stated that: "it is the arguement [sic] of the Plaintiff that the case is better characterized as one of 'disparate impact' with a different burden on the defendant." (Plaintiff's response to motion for summary judgment, at 7.)

I concluded that the plaintiff had failed to allege a prima facie case of "disparate impact" discrimination because she had "not asserted that an employment practice of the defendant has resulted in a *pattern* of disparate impact discrimination against female employees or applicants." (Order, at 3.) (Emphasis in original.) I added that:

"Indeed, the complaint and other pleadings and documents submitted by the plaintiff do not even allege that an employment practice of the defendant has harmed any other female employee or applicant besides the plaintiff. In other words, the plaintiff is alleging an individual instance of disparate impact discrimination, as opposed to a *pattern* of discrimination. Thus the plaintiff has not alleged a prima facie case of disparate impact discrimination." (*Id.*) (Emphasis in original.)

In her motion for reconsideration, the plaintiff contends that my order was wrong because an individual plaintiff can maintain a disparate impact claim. Additionally, although the plaintiff had stated in her response to the motion for summary judgment that her claim was "better characterized as one of disparate impact," than one of disparate treatment, she now appears to be arguing that she is entitled to recover from the defendant under disparate *treatment* analysis.[1] Specifically, her motion to reconsider states:

1. "Disparate treatment and disparate impact are

'alternative theories upon which a right to relief

"On the 'treatment' analysis, Defendant has offered nothing to refute Plaintiff's affidavit and the allegations of prior confrontations over the Plaintiff's desire to be kept busy in her job. The fact finder, at trial, is the appropriate judge of any adverse intent this may have created leading to the offer of a job to the Plaintiff that was being diminished in content, and the unwillingness to tell the Plaintiff what she might be doing." (Motion, at 2.)

The implication of this paragraph is that the plaintiff is now claiming disparate *treatment*. Because the plaintiff now apparently contends that disparate treatment analysis does apply to her case, I granted her motion for reconsideration.

Before addressing the disparate treatment claim, however, I address the plaintiff's argument that I erred in holding that she had failed to allege a prima facie case of disparate impact discrimination. Plaintiff contends that she adequately alleged a prima facie claim of disparate impact discrimination despite the fact that she only alleged one instance of discrimination. In support of her argument, she cites *Lasso v. Woodmen of the World Life Insurance Co.*, 741 F.2d 1241 (10th Cir.1984). Specifically, she relies on the court's statement that:

"[W]e must reject defendant's contention and hold instead that any individual plaintiff, like Lasso, may maintain a disparate impact claim." *Id.* at 1245.

My order, however, was consistent with the above-quoted language. I did not rule that the plaintiff's disparate impact claim must be dismissed because it was asserted by an individual plaintiff, as opposed to a class of plaintiffs. Rather, I concluded that the plaintiff had failed to allege that any other employee had been the victim of discrimination.

In fact, *Lasso* is distinguishable from this case. There, the plaintiff sued his former employer alleging that the defendant had failed to promote him because of his Hispanic heritage. Unlike the present case, however, the plaintiff in *Lasso* tendered statistical evidence showing that the defendant employer discriminated against minorities. Specifically, he presented evidence of the lack of Hispanics in management. Thus he alleged a pattern of discrimination. It cannot be overly stressed that the plaintiff in this case has not alleged that any other employee was discriminated against, and she certainly has not presented or offered to present at trial any statistical evidence to support such a claim. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977) (the policy or practice contemplated by the disparate impact doctrine consists of more than the mere occurrence of isolated, accidental or sporadic discriminatory acts, having reference instead to an employer's "standard operating procedure—the regular rather than the unusual practice").

■ I therefore conclude that my prior ruling that the plaintiff had failed to allege a prima facie case of disparate impact discrimination was correct, and I now consider whether the plaintiff has tendered sufficient proof in support of her claim of disparate treatment discrimination.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In *Catrett*, the Court held that Rule 56 mandates the entry of summary judgment, after adequate time for dis-

under Title VII may be established in a given case.'" *Williams v. Colorado Springs, Colorado School Dist.*, 641 F.2d 835, 839 (10th Cir.1981) (citation omitted). Disparate treatment analysis is applied to claims alleging that the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Disparate impact analysis, on the other hand, is applied to claims involving employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. *Id.*

covery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 106 S.Ct. at 2553. The Court explained that:

"In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she had the burden of proof." *Id.*

■ Defendant contends that the plaintiff has failed to allege sufficient facts to support a claim of disparate treatment discrimination under Title VII. Disparate treatment analysis under Title VII is applied to claims alleging that the employer simply treats one or more people less favorably than others because of their race, color, religion, sex, or national origin.

■ The factual inquiry in a disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. *United States Postal Workers Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed. 2d 403 (1983). A plaintiff can prove discrimination through direct or circumstantial evidence, or can make the required showing of discrimination by using the method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further explained in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under *McDonnell Douglas,* as clarified and explained in *Burdine,* a plaintiff must first establish a prima facie case of discrimination. "A prima facie showing by the plaintiff raises an inference of unlawful discrimination only because of a presumption that these acts otherwise unexplained are more likely than not based on impermissible factors." *Babrocky v. Jewel Food Co.,* 645 F.Supp. 1396, 1417–18 (N.D.Ind. 1986); *see Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Teamsters, supra,* 431 U.S. at 358, n. 44, 97 S.Ct. at 1866, n. 44.[2]

Once a plaintiff has established a prima facie case of disparate treatment, a rebuttable presumption arises that the defendant unlawfully discriminated against the plaintiff and the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment action. *Furnco Construction Corp., supra,* 438 U.S. at 577, 98 S.Ct. at 2949. In articulating its reasons, the defendant must be clear and reasonably specific; however it need not convince the court that it was actually motivated by those reasons. *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094.

■ If the defendant carries its burden of proof, then the presumption raised by the plaintiff's prima facie case is rebutted and the factual inquiry leads to a new level of specificity: the plaintiff must then demonstrate that the employer's proffered reason or reasons were merely pretextual or a coverup for discrimination. *Babrocky, supra,* 645 F.Supp. at 1418; *see Burdine, supra,* 450 U.S. at 252–53, 101 S.Ct. at 1093; *McDonnell Douglas, supra,* 411 U.S. at 802–05, 93 S.Ct. at 1824–25. A plaintiff can prove pretext by showing that: (1) the

**2.** The Court in *McDonnell Douglas* specifically stated that:

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was

rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants [sic] from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824.

However, the Court noted that the facts in Title VII cases vary and that the prima facie proof requirement may be adapted to the facts as appropriate. *Id.* at n. 13.

employer was more likely motivated by a discriminatory reason; or (2) the employer's proffered reason is unworthy of credence. *Burdine,* at 253–54, 101 S.Ct. at 1093–94; *Babrocky,* at 1418.

In *Babrocky,* the court stated:

"A plaintiff can show that the employer's proffered reason is unworthy of credence in three ways: (1) the company's reason or reasons have no basis in fact; (2) if they have a basis in fact, by showing that they were not really factors; or (3) if they were factors, by showing that they were jointly insufficient to motivate the adverse employment decision, i.e. the proffered reason was so removed in time that it was unlikely to be the cause or the proffered reasons applied to other employees with equal or greater force and the company made a different decision with respect to them." 645 F.Supp. at 1418.

Thus once a defendant in a disparate treatment case has moved for summary judgment, the plaintiff must supply evidence to support each element of a prima facie disparate treatment case. Even if the plaintiff is successful in this requirement, however, the inquiry does not end there. Rather the burden then shifts to the defendant to produce sufficient evidence to support its proffered legitimate nondiscriminatory reason for its employment decision. If the defendant succeeds in this task, then the plaintiff must produce evidence of pretext. A Title VII plaintiff, therefore, is not assured of withstanding a motion for summary judgment by merely tendering evidence to support his or her prima facie case of disparate treatment. Rather, evidence of pretext may also be necessary. *See Carey v. United States Postal Service,* 812 F.2d 621 (10th Cir.1987) (court upheld summary judgment in favor of employer where the plaintiff had failed to offer any direct evidence of pretext); *cf. Steckl v. Motorola, Inc.,* 703 F.2d 392 (9th Cir.1983) (plaintiffs in cases under Age Discrimination in Employment Act must tender genuine issue of material fact as to pretext in order to avoid summary judgment).

In the present case, the plaintiff contends that summary judgment is not proper because of factual issues identified in deposition testimony, the defendant's motion for summary judgment, and the plaintiff's affidavit. (Response, at 12.) Plaintiff's affidavit alleges these facts: She was employed at the Denver Parts Depot of the defendant company starting May 1973, and in 1986, she was employed in the shipping department of the depot as a "parts order selector." (Plaintiff's affidavit, at paras. 2–3.) After she learned about the defendant's planned reduction in force, and about the voluntary termination plan, she went to Tom Gibbons, manager of the depot, and told him that she was not interested in the plan. Gibbons, however, told her that if she remained with the company that she would not be able to keep the parts order selector job. Additionally, he refused to tell her what new position she would receive if she stayed with the company. (*Id.* at para. 6.)

Two days later, however, Gibbons informed her that if she stayed with the company, she would be transferred into the position of "expediter." (*Id.* at para. 7.) Plaintiff was concerned about this because of her perception that the expediter position did not involve very much work. (*Id.* at para. 8.) Additionally, she believed that she was being "bumped" out of her shipping department job by Clarence Truss, a black male who at one point had been her supervisor in the shipping department. (*Id.* at para. 9.) After she told Gibbons that she would take the voluntary separation, she was assigned to help Truss assume her responsibilities in the shipping department. (*Id.* at para. 10.) Plaintiff alleges that although the shipping order job required typing skills, Truss could not type. Thus she argues that Truss was unqualified for the job. (*Id.*)

■ I conclude that the plaintiff has offered sufficient evidence to support a prima facie case of disparate treatment discrimination. Specifically, she alleges that the defendant took her job away and replaced her with an unqualified male for no valid reason. She therefore has raised an inference of unlawful discrimination be-

cause of the presumption that such acts by an employer otherwise unexplained are more likely than not based on impermissible factors. *See Babrocky, supra,* 645 F.Supp. at 1417–18.

As discussed above, *supra,* once a plaintiff establishes a prima facie case of disparate treatment discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. In an effort to meet this burden, the defendant has supplied deposition testimony of Tom Gibbons. Gibbons explains the decisions to put the plaintiff in the expediter position and to place Truss in the plaintiff's job, as follows: Plaintiff was better qualified for the expediter job than Truss because of her data entry skills, her contacts with truckers, and her telephone proficiency with dealers and other company units. (Gibbons' dep. at 33, 35, 45–46, 57, 61–62.) For example, on page 35, the Gibbons' deposition states:

"Q. I don't think we've quite got back to the answer yet as to why did you offer Diana the expediter's job?

A. Well, when you have positions to be filled, you try to fill them with the most qualified people. And in this case, both positions were Grade 4. It would have been a lateral move. And we quite often or we occasionally will take and move a person to another position where they are, perhaps, better qualified and in the same grade level.

Q. What made her better qualified for the expediter's job?

A. Diana was a person who was on the phone a lot with dealers and had better phone skills that the other people in the offices. She had good recent transportation communication and experiences. And those were the two main reasons."

As additional proof that it did not discriminate against the plaintiff, the defendant stresses the undisputed fact that under the voluntary separation plan, the plaintiff received an entire year's salary in severance pay. Also, the plaintiff would have been paid the same salary in the expediter job as in the shipping position.

■ I conclude that the defendant has presented ample evidence of a legitimate, nondiscriminatory business reason for placing the plaintiff as an expediter and putting Truss, a more senior employee who once supervised the plaintiff, into the plaintiff's order scheduler job. It is reasonable that a company faced with a reduction in force would attempt to shift its employees around in order to adjust to the situation.

Because the defendant has offered sufficient proof to support its burden of demonstrating a legitimate nondiscriminatory reason for placing Truss in the plaintiff's job, the next inquiry is whether the plaintiff has presented sufficient evidence of pretext on the defendant's part. After reviewing the affidavits, deposition testimony, and other pleadings submitted in this case, I conclude that the plaintiff has offered no evidence to that defendant's articulated reason for placing Truss in the plaintiff's position was a pretext. Thus the plaintiff has failed to offer any evidence on an essential element of its claim of disparate treatment discrimination. Therefore the defendant is entitled to summary judgment on this issue.[3]

Accordingly, for the reasons stated above, IT IS ORDERED that:

(1) My earlier order granting the defendant's motion for summary judgment is re-affirmed and shall remain in effect; and

(2) The judgment entered against the plaintiff on February 1, 1988, dismissing the complaint and this action is re-affirmed and shall remain in effect.

---

3. On March 9, 1988, the defendant filed a Motion for Clarification of Minute Order Granting Plaintiff's Motion for Reconsideration. Defendant specifically requests that I clarify the minute order (1) to make clear that the status of the case and the judgment entered therein shall remain unaltered pending an order of the court after the permitted reconsideration; and (2) to provide the defendant an opportunity to respond to the plaintiff's asserted grounds for reconsidering the summary judgment that the defendant considers was justified. My ruling today renders the defendant's motion moot.