Samuel **TAYLOR, and the class he represents, Plaintiff-Appellant,**

v.

**SAFEWAY STORES, INCORPORATED, Defendant-Appellee.**

**No. 74–1409.**

United States Court of Appeals, Tenth Circuit.

Argued March 28, 1975.

Decided Oct. 3, 1975.

Douglas E. Bragg, Carrigan & Bragg, Denver, Colo., for plaintiff-appellant.

William C. McClearn, Holland & Hart, Denver, Colo. (R. Brooke Jackson, Denver, Colo., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and BARRETT, Circuit Judges.

LEWIS, Chief Judge.

This appeal originates from a suit charging Safeway Stores, Inc. of Colorado with discriminatory employment practices in violation of 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. The plaintiff Taylor filed this suit on behalf of himself and those "Negro persons who are employed, have been employed, or might have been in the past or will in the future be employed by Safeway . . . in its various wholesale, retail, and distribution centers throughout . . . Colorado."

Taylor was hired by Safeway to work at its Denver frozen food warehouse on December 1, 1968. Three weeks later Taylor was discharged, ostensibly because of his inadequate job performance. In January 1969, Taylor filed complaints against Safeway with both the Colorado Civil Rights Commission and with the Equal Employment Opportunity Commission. The Colorado commission did not find any actionable discriminatory acts, but the EEOC found "reasonable cause" to believe that Safeway had violated Title VII in discharging Taylor. After being advised by the EEOC of his right to bring a suit, Taylor filed this action on April 20, 1971.

In several preliminary rulings, the district court (1) dismissed Taylor's section 1981 action, holding that it could not be maintained until he had exhausted all of his Title VII remedies, and (2) held that under Rule 23(a)'s typicality requirement, Taylor's class claim should be limited to "a class of Negroes employed at

the frozen food warehouse in the Denver distribution center."

After a trial on the merits, the district court concluded that Safeway had not discriminated against Taylor individually in its initial failure to hire him, in his job training, or in its refusal to transfer him to a retail store. 365 F.Supp. 468, 471–75, D.C.Colo. The court found, however, that Taylor's discharge from the frozen food warehouse had been racially motivated. The evidence indicated that Taylor's immediate supervisor at the warehouse had an adverse attitude towards blacks and had manipulated Taylor's work assignments in such a manner as to influence negatively his production averages. On the individual claim, the court awarded Taylor back pay and attorney's fees, but refused to reinstate him. Finding no merit in Taylor's class claim the court refused to award attorney's fees.

Taylor appeals those rulings adverse to him. We affirm the rulings of the district court in part, reverse in part, and remand.

## I

We will first examine the alleged errors made by the district court in its rulings relating to Taylor's individual claims.

After a special hearing on relief and damages, the district court awarded Taylor back pay in the amount of $3,256 for the period from January 16, 1969, the time when Taylor was able to return to work after a temporary disability, to September 25, 1969, when Taylor became a full-time student at the University of Northern Colorado. Taylor alleges error in the district court's failure to include the period during which he was a full-time student in computing the back pay award.

■ In Title VII cases, the awarding of back pay is a remedy within the discretion of the trial court.[1] *Head v. Timken Roller Bearing Co.*, 6 Cir., 486 F.2d 870, 876; *Brito v. Zia Co.*, 10 Cir., 478 F.2d 1200, 1204. Before this court will invalidate a discretionary award made by the district court under 42 U.S.C. § 2000e–5(g), it must be shown that the trial court acted unreasonably or abused its power.

After being discharged from Safeway, Taylor worked for a steel company in Denver for several months and during the summer returned to his hometown of Chicago to work heavy construction. Upon returning to Denver at the end of August, and being unable to find employment, Taylor heard that the University of Northern Colorado at Greeley was recruiting minorities. Since he had no job prospects on the "horizon," he and his wife decided to enroll. Taylor testified while attending school, he continued to look for employment in both Greeley and Denver; had he found full-time work anytime prior to receiving his bachelor's degree in December 1971, Taylor asserts he would have accepted it.

■ We were able to find only one Title VII case that has mentioned the effect that full-time school enrollment has on the computation of back pay awards. *United States v. Wood, Wire & Metal Lathers Local 46*, S.D.N.Y., 328 F.Supp. 429. There, the court cited a discharged employee who returned to school as an example of someone no longer "ready, willing and available" for employment and thus not entitled to a back pay award. *Id.* at 444. If a dis-

1. Title VII gives the courts considerable leeway in fashioning the appropriate remedies for each case. 42 U.S.C. § 2000e–5(g) provides in part:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, *and order*

*such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay* (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

(Emphasis added.)

charged employee accepted employment elsewhere, there is little doubt that this would cut off any back pay award. If not, the employee would be receiving a double benefit for the same period of time. Likewise, when an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a back pay award for the period while attending school also would be like receiving a double benefit. We fail to see that the district court abused its discretion in not including the time Taylor was attending school in the computation of the back pay award.

At the time of Taylor's wrongful dismissal, Taylor had two years of college; by the end of the trial, Taylor had a master's degree and was employed as a management-trainee at the Gates Rubber Company. Taylor asserts that it was an error for the court not to order his reinstatement with Safeway, not in the frozen food warehouse, but rather in a position commensurate with his education (e. g., a management position).

 As with back pay awards it is within the court's discretion under Title VII to order reinstatement of a wrongly discharged employee. 42 U.S.C. § 2000e–5(g). Since Taylor was already employed in a management position with the Gates Rubber Company, the court did not abuse its discretion by failing to order Taylor's reinstatement at Safeway's frozen food warehouse, which, according to the testimony of Taylor, he would have not accepted anyway. Likewise, Taylor has not demonstrated that reinstatement in a position "commensurate with his skills" is dictated by 42 U.S.C. § 2000e–5(g) or that it was unreasonable for the court to refuse to do so. Absent such a showing, we will sustain the trial court's order of relief as a proper exercise of its Title VII power.

2. In fact, the district court employed the same factors recommended by DR 2–106(B) of the Code of Professional Responsibility for determining the reasonableness of attorney's fees.

3. The following must be established in order to maintain a class action under Rule 23:

 After conducting a special hearing on damages, the trial court awarded Taylor attorney's fees of $3,000, citing the following as factors used in computing the award: (1) the number of hours the attorney used in preparing and arguing the claim; (2) the novelty and complexity of the case; (3) the skill and preparedness of the attorney; (4) the resulting judgment; and (5) awards in similar cases. Taylor argues that since the award only amounts to $17 per hour that the trial court abused its discretion. This court has previously ruled that in Title VII cases, the trial court has discretion to set reasonable attorney's fees and that an award of $12 per hour was not an abuse of discretion. *Brito v. Zia Co., supra; Barela v. United Nuclear Corp.,* 10 Cir., 462 F.2d 149, 155–56. Without a showing that the district court based its computation on improper factors,[2] we will not hold in the instant case that the award was an abuse of discretion.

However, we deem the amount awarded to be modest under the present posture of the case and in view of the limited remand we determine necessary regarding the dismissal of Taylor's section 1981 claim, discussed below, the trial court should reevaluate the award in light of further proceedings and the additional question of whether some of the legal preparations in the class claim was also pertinent to the section 1981 claim.

## II

We next turn our attention to Taylor's class claims. Prior to the trial, Safeway challenged the ability of Taylor to represent a class of all "Negro persons who are employed, have been employed, or might have been in the past or will in the future" be employed by Safeway in its wholesale, retail, and distribution facilities throughout Colorado for failure to meet the prerequisites of Rule 23(a).[3]

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representa-

The district court determined that Taylor had not met the typicality requirement of Rule 23(a)(3) as defined by *White v. Gates Rubber Co.,* D.Colo., 53 F.R.D. 412, where the district court ruled that the typicality prerequisite required a class action plaintiff to "demonstrate that other members of the class he purports to represent [actual, not hypothetical complainants] have suffered the same [or similar] grievances of which he complains." *Id.* at 415.

Initially, the district court held that Taylor had met this burden,[4] but carefully noted that this was merely a "threshold determination" and not final. 333 F.Supp. 83 at 87, D.C.Colo. Later, the district court found that at most, Taylor had only established that his grievances were typical of a class of Negro employees situated at Safeway's frozen food warehouse in Denver, thus effectively narrowing the original class claim made by Taylor.

■ Taylor argues that regardless of the correctness of the typicality definition in *White* as applied in other types of class actions, it is inappropriate in Title VII cases because it prematurely limits the class making it difficult for the individual plaintiff to prove the existence of individuals with similar claims. Taylor also contends that Title VII class claims need not meet the technical requirements of Rule 23. We must reject both contentions. In order to maintain a class action, Title VII plaintiffs are not exempted from the prerequisites of Rule 23(a). *Brito v. Zia Co., supra,* at 1204; *Washington v. Safeway Corp.,* 10 Cir., 467 F.2d 945, 947. Likewise, if the *White* definition of the typicality requirement is correct, it applies equally to all class actions, including Title VII cases.

Rule 23(a)(3) has been the subject of various judicial interpretations since it first appeared in the 1966 amendments to the Federal Rules of Civil Procedure,[5] which can be partially explained by the failure of the advisory committee to articulate the meaning of the Rule 23(a) prerequisites. The courts have not only failed to give Rule 23(a)(3) a commonly accepted meaning, but have been accused of giving it no independent meaning at all or merely making it duplicative of other Rule 23(a) prerequisites.[6] The guiding rationale for many of the judicial interpretations of the typicality requirement has been the historical nexus between subsections (a)(3) and (a)(4); both of these subsections were derived from a common phrase in the original Rule 23 requiring "one or more [representatives], as will fairly insure the adequate representation of all . . . ." Because of its source in the original rule, subsection (a)(3) should logically deal

tive parties will fairly and adequately protect the interests of the class.
Fed.R.Civ.P. 23(a).

4. In *White,* the court explained that:
Any method of demonstrating that some members of the class to be represented share the plaintiff's grievances would be acceptable, whether by affidavit, by enumerating charges filed with the EEOC . . . or by some other means.
53 F.R.D. at 415. The fact that some of Taylor's allegations were corroborated by two Safeway employees in the EEOC report was found as sufficient to meet the preliminary burden on the typicality requirement.

5. *See, e. g., Rosado v. Wyman,* E.D.N.Y., 322 F.Supp. 1173, 1193, *aff'd on other grounds,* 2 Cir., 437 F.2d 619, *aff'd,* 402 U.S. 991, 91 S.Ct.

2169, 29 L.Ed.2d 157 (the typicality requirement was "designed to buttress the fair representation requirement in Rule 23(a)(4)"); *Cohen v. District of Columbia National Bank,* D.D.C., 59 F.R.D. 84, 89 (typicality is satisfied when there is a lack of adversity between the representatives and the absent class members); *Taliaferro v. State Council of Higher Education,* E.D.Va., 372 F.Supp. 1378, 1387 (typicality requires that the disputed issue occupy a similar degree of centrality to the claim of the representative as to that of the other class members); *Lewis v. Bogin,* S.D.N.Y., 337 F.Supp. 331 (no explanation of typicality).

6. Professor Moore noted: "In fact, there is no need for this clause, since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23." 3B *Moore's Federal Practice* ¶ 23.06–2 at 23–325.

with the adequacy of representation, but due to the broad language of subsection (a)(4) that a representative must "fairly and adequately" represent the class, it is difficult to attach a meaning to (a)(3) that is not included or does not overlap somewhat with subsection (a)(4).

It was against this backdrop that the district court in *White* determined that the typicality requirement "must be given an independent meaning" or otherwise there was no need to have included it as a prerequisite of Rule 23(a). *White, supra,* at 415. The district court in *White* ruled that subsection (a)(3) at least requires that class-action plaintiffs establish that "there is in fact a class needing representation." *White* has not been alone in attempting to give the typicality requirement an independent meaning and requiring the plaintiff to establish the existence of a class. *E.g., Poindexter v. Teubert,* 4 Cir., 462 F.2d 1096, 1097; *Kinsey v. Legg, Mason & Company, Inc.,* D.D.C., 60 F.R.D. 91, 100; *Sullivan v. Winn-Dixie Greenville, Inc,* D.S.C., 62 F.R.D. 370, 375.

■ We accept *White's* compelling reasoning that subsection (a)(3) must have a meaning independent of the other provisions of Rule 23(a). Any inquiry into typicality under Rule 23(a)(3) requires a comparison of the claims or defenses of the representative with the claims or defenses of the class. Since the burden is on the plaintiff to establish the prerequisites of Rule 23, *Redhouse v. Quality Ford Sales, Inc.,* 10 Cir., 511 F.2d 230, 235, it is not unreasonable to require the plaintiff to establish the existence of a class as preliminary to the court's comparison of claims and defenses. The *White* definition of typicality has done no more than verbalize an implicit requirement of subsection (a)(3); therefore, we must conclude that this definition is correct.

■ Next, we must examine whether the trial court correctly applied subsection (a)(3) to the present case. The trial court found that Taylor had failed to present evidence of any discriminatory employment practices by Safeway outside of the frozen food warehouse and limited his class action to individuals employed at the warehouse. Since Taylor has failed to show the existence of any discriminatory employment practices by Safeway outside the frozen food warehouse or the existence of any similarly aggrieved Safeway employee outside the warehouse, the trial court had no alternative than to limit his class claim to warehouse employees.

Taylor asserts that his "across-the-board" attack on Safeway's employment practices throughout Colorado was sufficient to sustain his original class claim, citing as authority *Johnson v. Georgia Highway Express, Inc.,* 5 Cir., 417 F.2d 1122. In *Johnson,* the trial court ruled that the Title VII plaintiff, a discharged employee, could only represent other discharged Negro employees of the company. The Fifth Circuit rejected this narrowing of the class because on the face of the complaint the plaintiff had made an "across-the-board" attack on the company's employment practices.

■ *Johnson* does not support Taylor's contention that an "across-the-board" attack on a company's employment practices exempts a plaintiff from the requirements of Rule 23(a). The Fifth Circuit's rejection of the narrowing of the class was really a rejection of the trial court's assertion that a class action could not be maintained because different employees would have different fact situations than the plaintiff Johnson. *Johnson, supra,* at 1124. Furthermore, even if Taylor's reading of *Johnson* were correct, we would have to reject it. If the mere assertion of widespread employment discrimination were sufficient to satisfy the typicality requirement, subsection (a)(3) would again be rendered superfluous, since it would be unrealistic for a court to compare the claims and defenses of the plaintiff with the hypothetical claims of a hypothetical

class.[7] We sustain the trial court's ruling limiting Taylor's class claim to those employed by Safeway at its frozen food warehouse in Denver.[8]

■■ In his class claim, Taylor attacks three of Safeway's hiring and employment practices as being discriminatory in violation of Title VII—the word-of-mouth or employee referral system, the prohibition against transfers between Safeway's warehouses and retail stores, and the work experience requirement. Under the dual approach afforded by Title VII, Taylor may prove that these Safeway practices are discriminatory either because they presently discriminate against blacks or even though neutral on their face, these current practices maintain the vestiges of prior discrimination. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158.

At the time Taylor was hired, the Safeway hiring system was decentralized; the managers of the retail stores and the distribution center did their own hiring. The superintendent of Safeway's distribution center, the individual in charge of hiring employees for the frozen food warehouse, testified that more than 50 percent of those hired at the distribution center were employee referrals. Taylor asserts that the practice of using employee referrals to fill job openings at the distribution center perpetuated the racial imbalance created by Safeway's past discrimination.

Substantial reliance on employee referrals for job applicants sometimes has been found to violate Title VII. *Gresham v. Chambers,* 2 Cir., 501 F.2d 687, 691; *United States v. Georgia Power Co.,* 5 Cir., 474 F.2d 906, 925–26; *Parham v. Southwestern Bell Telephone Co.,* 8 Cir., 433 F.2d 421, 427. These cases held that an employee referral system for hiring is an unlawful employment practice under Title VII where an employer relies primarily or exclusively on such a method and because of a history of past discrimination, the almost all white work force tends to perpetuate itself.

The first question then is whether Safeway placed substantial or exclusive reliance on an employee referral system. Between 1965 and 1971, less than 7 percent of Safeway's recruitment throughout Colorado was by employee referral. However, more relevant to Taylor's class claim is the testimony of the superintendent of the distribution center that a substantial amount of the hiring, more than 50 percent, came through employee referrals.

■■ The second inquiry of the analysis of Safeway's employee referral practice is whether there is an evident pattern of past discrimination. Racial statistics are an entirely appropriate method of proving prima facie discrimination, but the district court found that statistically, Taylor failed to establish a prima facie case of past or present discriminatory hiring practices against Safeway. *Spurlock v. United Airlines, Inc.,* 10 Cir., 475 F.2d 216, 218; *Jones v. Lee Way Motor Freight, Inc.,* 10 Cir., 431

---

7. In his special concurrence in *Johnson,* Judge Godbold indicated that the ruling is not as broad as it first appears:

> The status of the Title VII complainant as a private attorney general does not entitle him to proceed with all cards held to his chest or with no cards at all. The class action is a useful tool or device whose capacities are wide but not without limits.

*Johnson, supra,* at 1125.

8. This is not contra our recent decision in *Rich v. Martin Marietta Corp.,* 10 Cir., 522 F.2d 333 (1975). In *Rich* we ruled that the plaintiffs could maintain a broad scale attack on the company's employment practices:

> [T]o the extent . . . that employees throughout the plant of the Martin Company were discriminated against as a result of the company's policies, the plaintiffs made claims which embraced these other people *regardless of whether they were engaged in work identical to that of the plaintiffs.*

*Id.* at 341 (emphasis added). Our decision in the present case does not rest on the well established rule that the claims of all of the class need not be identical to those of the plaintiffs or that all the class plaintiffs must be involved in identical work, but rather that the plaintiff must prove the existence of a ·class with similar claims.

F.2d 245, 247, *cert. denied,* 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237. The district court compared the percentage of blacks living in the Denver Standard Metropolitan Statistical Area, 4.1 percent, with the number of blacks hired by Safeway at the frozen food warehouse between 1968 and 1972,[9] an average of 18 percent each year. We have recently ruled that in discrimination cases, statistical data should be closely related to the specific issues presented. *Rich v. Martin Marietta Corp.,* 10 Cir., 522 F.2d 333 (1975). Since the district court limited Taylor's class claim to the frozen food warehouse its choice of data for comparison was proper. As did the district court, we find no substantial statistical disparity in blacks employed at the warehouse to prove a prima facie case of past discrimination by Safeway in its hiring at the frozen food warehouse. Thus, even though the hiring at the distribution center relied heavily on employee referrals, absent evidence of prior discrimination, we must sustain the district court's finding that the employee referral system was not a violation of Title VII.

■■ A second employment practice challenged by Taylor was Safeway's policy of not allowing transfers between retail stores and warehouse jobs. According to Taylor, the no-transfer policy was a means of locking the blacks into the hard laboring jobs of the warehouses, thus in violation of the standards set down by the Supreme Court in *Griggs, supra,* and our court in *Jones v. Lee Way Motor Freight, Inc., supra.* The district court ruled that neither of these cases was supportive of Taylor's allegations since Taylor had not shown a history of prior discrimination by Safeway. The district court correctly found that a no-transfer policy applied equally to all employees would not be a violation of Title VII absent a showing of a pattern indicating past discriminatory practices. Statistically, blacks constituted 4.27 per-

cent of the employees at the distribution center, whereas they only comprised 2.01 percent of the total employment. Contrary to Taylor's claims, we must agree with the district court that this difference does not constitute enough of a statistical disparity to prove a prima facie case of past discrimination by Safeway.

■ The final allegedly discriminatory employment practice challenged by Taylor was Safeway's use of work experience as an employment qualification. Taylor contends that since whites are more likely to have warehousing experience than are blacks, due to the prior discriminatory barrier that prevented blacks from obtaining warehouse experience, Safeway's hiring preference for new employees with work experience was in violation of Title VII as interpreted by *Griggs.* The district court found that the work experience qualification was not a substantial factor in the distribution center's hiring and that Taylor had failed to show that giving preference to applicants with previous experience was discriminatory in effect. Several cases have held that requiring work experience of applicants was in violation of Title VII. *United States v. N. L. Industries, Inc.,* 8 Cir., 479 F.2d 354; *United States v. Sheet Metal Workers Local 36,* 8 Cir., 416 F.2d 123. In both of these cases, however, the court found that there was a history of past discrimination and that the work experience qualification was an absolute requirement. There is no evidence of past discrimination, no showing that Safeway placed even substantial reliance on previous work experience, and no evidence of this qualification having a discriminatory effect. Therefore, we must conclude that the work experience qualification was not violative of Title VII.

Taylor challenged the correctness of the trial court's decision not to allow a claim for back pay under Rule 23(b)(2), the provision under which Taylor's class claim was brought. In light of our de-

**9.** The district court probably chose this time period, 1968 to 1972, because Taylor's action arose in 1968 and Safeway continued its same

hiring policies until 1972, when they were changed as part of a nationwide affirmative action program.

termination that the district court correctly found no class violation of Title VII, it is unnecessary for us to rule on the validity of the trial court's ruling as to the availability of back pay in certain class actions.

 Title VII allows the district court at its discretion to award attorney's fees to the prevailing party.[10] As to Taylor's class claim, the district court held that Taylor was not the prevailing party and thus awarded no attorney's fees. Taylor contends, however, that because his lawsuit was the impetus for Safeway's alteration of its employment practices,[11] the policy of encouraging private enforcement of Title VII would be defeated if he were not awarded attorney's fees. According to Taylor, such was the underlying policy consideration in *Parham v. Southwestern Bell Telephone Co., supra,* at 429–30, when the court awarded attorney's fees for the class even though it did not impose an injunction on the employer. *Parham* presented a different question than with which we are confronted here. In *Parham,* the plaintiff brought both individual and class claims under Title VII. Subsequent to the filing of this action, the employer reformed its employment practices seeking to comply with Title VII. The court found that the class had been subject to employment discrimination, but because of the employer's voluntary implementation of a plan to comply with Title VII, prompted by the plaintiff's lawsuit, it was not necessary to impose an injunction against the employer. Thus, the true question was whether a party prevailing on a class claim was entitled to an award of attor-

ney's fees absent the imposition of an affirmative remedy against the offending party when the lawsuit was the "catalyst" behind the changed employment practices. The question here is somewhat different: Whether a nonprevailing class representative is entitled to attorney's fees merely because subsequent to his suit, the employer changed several employment practices. First of all, Taylor has not shown that the Safeway's changes were instigated because of his lawsuit. In fact, the hiring of an Affirmative Action Program Director and the subsequent changes referred to by Taylor were part of a nationwide program by Safeway to hire more minority employees. Even if Taylor could show that these changes were a direct result of his lawsuit, he still would not be entitled to attorney's fees for the class since he did not prevail on any of the class claims. The district court did not abuse its discretion under 42 U.S.C. § 2000e–5(k) in not awarding attorney's fees.

### III

The final issue we need discuss is whether the district court wrongfully dismissed Taylor's claim under section 1981, holding that until he exhausted all of his Title VII remedies or could demonstrate that Title VII would not be an effective remedy, a section 1981 claim could not be maintained. Relying on the reasoning in *Waters v. Wisconsin Steel Works of Int'l Harvester Co.,* 7 Cir., 427 F.2d 476, *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151, the district court found that to allow simultaneous claims under both Title VII and section 1981 would make Title VII redundant

**10.** 42 U.S.C. § 2000e–5(k) reads:

In any action or proceeding under this subchapter the court, in its discretion, *may allow the prevailing party,* other than the Commission or the United States, *a reasonable attorney's fee* as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.
(Emphasis added.)

**11.** In July 1971, Safeway's national organization hired Larry Taft to fill its newly designed

position of Affirmative Action Program Director. Mr. Taft, working out of the national headquarters in Oakland, California, was instrumental in overhauling some of the employment practices used by Safeway in Colorado. For example, in April 1972, Safeway changed its policy of hiring through the store managers and the distribution center supervisors. Instead, all new hiring was accomplished at the division office. Taylor feels that his lawsuit was responsible for these changes.

and render the EEOC's administrative mechanisms "impotent" contrary to the intention of Congress.

■■■ We must reject this reasoning of the district court and accept the prevailing view that section 1981 is an independent cause of action and may be maintained concurrently with a claim under Title VII or without exhausting Title VII remedies. *Alpha Portland Cement Co. v. Reese,* 5 Cir., 507 F.2d 607, 609; *Long v. Ford Motor Co.,* 6 Cir., 496 F.2d 500, 503–05; *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979, 996; *Brady v. Bristol-Meyers, Inc.,* 8 Cir., 459 F.2d 621, 623–24; *Young v. International Telephone & Telegraph Co.,* 3 Cir., 438 F.2d 757, 760–63. *Waters,* the only court of appeals decision supporting the district court's position seems to have been subsequently rejected in favor of allowing section 1981 actions regardless of a plaintiff's failure to exhaust his Title VII remedies.[12] *Waters v. Wisconsin Steel Works of Int'l Harvester Co.,* 7 Cir., 502 F.2d 1309, 1315, *petition for cert. filed,* 44 U.S.L.W. 3010 (U.S. Feb. 24, 1975)(No. 74–1064).

In concluding that section 1981 is an independent action and can be brought concurrently with a Title VII action, we have the benefit of two recent Supreme Court cases that commented on the relationship between these provisions. In *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295, Justice Blackmun observed that:

> Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief.

*Id.* at 459, 95 S.Ct. at 1719.[13] *See also Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–48, 94 S.Ct. 1011, 39 L.Ed.2d 147. Our conclusion that an exhaustion of Title VII remedies is not a jurisdictional prerequisite for the maintenance of a section 1981 action is also supported by the different substantive and enforcement provisions of these two sections.[14] As one court of appeals noted, section 1981 and Title VII

> provide for such radically different schemes of enforcement and differ so widely in their substantive scopes that using the policies behind [Title VII] to create procedural barriers to actions under [section 1981] would stretch to the breaking point courts' customary duty to accommodate allegedly conflicting legislation.

*Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979, 996.

By accepting the argument that section 1981 is independent of Title VII because of the differing substantive provisions found in each section and that the court erred in dismissing the claim we

---

**12.** In its second *Waters* decision, the Seventh Circuit observed:

> Moreover, we note and are somewhat inclined to agree with the recent decisions which hold that exhaustion of Title VII remedies, or reasonable excuse for failing to do so, is not a jurisdictional prerequisite to an action under section 1981.

502 F.2d at 1315.

**13.** In support of his observation, Justice Blackmun cited several congressional statements. One House of Representatives report explained that "the remedies available to the individual under Title VII are coextensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive." H.R.

Rep. No. 238, 92 Cong., 1st Sess. 19 (1971). Also, when Congress was considering the Equal Employment Opportunity Act of 1972, the Senate rejected an amendment that would have made Title VII the exclusive federal remedy for unlawful employment practices. 118 Cong.Rec. 3371–73.

**14.** *Young v. International Telephone & Telegraph Co., supra,* traces some of the main differences: (1) Section 1981's scope is broader as to the covered employers whereas Title VII's coverage is broader in terms of victims of discrimination; (2) section 1981 is not controlled by a federal statute of limitations but Title VII is subject to strict time limitations; (3) Title VII provides for an award of reasonable attorney's fees, a provision not found in 1981 actions.

remand the case for further proceedings on this aspect of the case. Such proceedings need only allow Taylor an opportunity to present such additional evidence, if any there be, not proffered in his Title VII trial and consistent with the trial court's present findings, but pertinent to the particulars of the section 1981 claim. Any subsequent judgment must be premised on the entire record and in accord with the views herein expressed.

The judgment is affirmed in all regards except as indicated. No costs are awarded.