**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**and**

**Francis A. Nelson, Plaintiff-Intervenor,**

**v.**

**LADY BALTIMORE FOODS, INC. and Department Store, Package Grocery, Paper House, Liquor and Meat Drivers, Helpers and Warehousemen, Local 955, Defendants.**

**Civ. A. No. 84–2265–S.**

United States District Court, D. Kansas.

Sept. 3, 1986.

James R. Neely, Jr., Gretchen D. Huston, Michael A. Middleton, Associate Gen. Counsel, E.E.O.C., Washington, D.C., E.E.O.C., Sue A. Phillips, Ferne P. Wolf, Sr. Trial Atty., St. Louis, Mo., for E.E.O.C., plaintiff.

James F. Adler, James T. Pietz, Kansas City, Mo., Ronald Schneider, Kansas City, Kan., for Francis A. Nelson, plaintiff-intervenor.

Joseph W. Moreland, William S. Robbin, Jr., Blake & Uhlig, Kansas City, Kan., for Department Store, Package Grocery, Paper House, Liquor and Meat Drivers, Helpers and Warehousemen, Local 955.

Thomas M. Welsch, Spencer, Fane, Britt & Browne, Overland Park, Kan., James G. Baker, Michael F. Delaney, David L. Wing, Kansas City, Mo., for Lady Baltimore Foods, Inc.

**MEMORANDUM AND ORDER**

SAFFELS, District Judge.

This matter is before the court on plaintiff's and plaintiff-intervenor's joint motion for summary judgment on the issue of race discrimination under 42 U.S.C. § 2000e *et seq.* Defendant Lady Baltimore Foods, Inc. has submitted to the court a letter indicating that it will not be filing a response to this motion. Defendant Department Store, Package Grocery, Paper House, Liquor and Meat Drivers, Helpers and Warehousemen, Local 955 (Local 995) has submitted a response to this Court's Show Cause Order in which it offers no opposition to plaintiffs' motion.

The formally unopposed nature of this motion puts it in a unique posture. A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.

1985). However, simply putting forth an unopposed statement of uncontroverted facts does not entitle the movant to judgment as a matter of course, nor does it conclusively prove that the facts set forth are indeed "uncontroverted." It is improper to grant a motion for a summary judgment simply because it is unopposed. *Hibernia National Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985). The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Id.* The party moving for summary judgment also has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden, he is not entitled to judgment. *Security National Bank v. Belleville Livestock Commission, Co.,* 619 F.2d 840, 848 (10th Cir.1979). This court must thus be certain that the uncontroverted facts as established by the unopposed motion for summary judgment reveal no undisclosed factual dispute and constitute a sufficient legal basis for this court to grant plaintiffs judgment as a matter of law.

Pursuant to the standards set out above, for the purpose of this motion, the court finds the following relevant uncontroverted facts:

1. The Equal Employment Opportunity Commission filed this action on July 2, 1984, charging defendant Lady Baltimore Foods, Inc., a wholesale food distributor, with violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). This alleged violation is based on discrimination against blacks in recruitment and hiring, as well as on the failure to make and keep records as required by Title VII. Defendant Local 955 was added as a party having interest in the outcome of the litigation under Rule 19 of the Federal Rules of Civil Procedure. Francis A. Nelson, a black American male who was denied the right to apply for a truck driver position with the defendant Lady Baltimore, intervened in the lawsuit as an "ag-grieved person" within the meaning of section 706(f)(1) of Title VII, claiming a statutory right to intervene to ensure that his private interests are adequately protected and litigated.

2. In its answers, Lady Baltimore denied that it had violated Title VII or in any manner engaged in race discrimination.

3. On July 1, 1981, Lady Baltimore employed 85 blue-collar employees, including 6 blacks, 75 non-blacks, and 4 unknown.

4. From July 1, 1981 through December 31, 1983, Lady Baltimore used word-of-mouth recruiting by its predominantly non-black employees.

5. The Kansas City Standard Metropolitan Statistical Area (SMSA) availability figures for blue-collar classifications indicate that 15.9% of the persons available for work in the blue-collar positions at Lady Baltimore were black in the years 1981 through 1983.

6. From July 1, 1981 through December 31, 1981, Lady Baltimore would have been expected to hire an additional 1.6 blacks to match the Kansas City SMSA availability figures.

7. From January 1, 1982 through December 31, 1982, Lady Baltimore would have been expected to hire an additional 4.1 blacks to match the Kansas City SMSA availability figures.

8. From January 1, 1983 through December 31, 1983, Lady Baltimore would have been expected to hire an additional 1.5 blacks to match the Kansas City SMSA availability figures.

9. The plaintiff, the plaintiff-intervenor, and the defendant Lady Baltimore, have entered into a consent decree which outlines a settlement of most of the relief to be accorded the plaintiffs if this court grants summary judgment in favor of the plaintiffs. If the court grants summary judgment, the plaintiffs and Lady Baltimore agree that retroactive seniority should be imposed as set forth in the proposed consent decree. This is the only aspect of the case that directly affects Lo-

cal 955 and was the basis for including Local 955 as a defendant. As mentioned before, however, Local 955 takes no position on the motion for summary judgment.

The plaintiffs rely on the disparate impact theory to prove race discrimination. The disputed practice is the employee referral (or word-of-mouth) system in recruitment and hiring. In a recent Ninth Circuit opinion, that court disputed the validity of using the disparate impact analysis in viewing a "subjective" employee selection practice. *Atonio v. Wards Cove Packing Co.,* 768 F.2d 1120 (9th Cir.1985). The court stated that because practices such as word-of-mouth recruitment and subjective decision making "lend themselves far better to scrutiny for intentional discrimination," *id.* at 1133, the disparate impact analysis should not be permitted. The *Atonio* court acknowledged the presence of a dispute in the circuit courts of appeals on this issue, particularly noting that the Tenth Circuit permits disparate impact analysis in cases involving these subjective employment practices. *Id.* n. 8 (citing *Lasso v. Woodmen of World Life Insurance Co.,* 741 F.2d 1241 (10th Cir.1984); *Williams v. Colorado Springs School District,* 641 F.2d 835 (10th Cir.1981)). The *Lasso* court explained in depth its use of the disparate impact theory, *Lasso,* 741 F.2d at 1245–46, and this court is compelled to follow this precedent.

In *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir.1975), the Tenth Circuit set the standard for a discriminatory impact case under Title VII based on the word-of-mouth hiring practice. The court recognized that using an employee referral system has sometimes been found to violate Title VII. *Id.* at 271 (citations omitted). "An employee referral system for hiring is an unlawful employment practice under Title VII where an employer relies primarily or exclusively on such a method and because of a history of past discrimination, the almost all white work force tends to perpetuate itself." *Id.*

The first element of the Tenth Circuit's test is whether Lady Baltimore primarily or exclusively relied on an employee referral system. The court in *Taylor* had before it statistical evidence showing that only 7% of the defendant company's recruiting was by word of mouth. A supervisor testified to the contrary, claiming that 50% of hiring was achieved through employee referrals. The *Taylor* court made no finding on this element, however, because its holding on the second element sufficiently disposed of the matter. In the present case, the uncontroverted facts show only that Lady Baltimore used word-of-mouth recruiting by its predominantly non-black employees, which may have had a disparate impact on the hiring of blacks. The evidence wholly fails to indicate how substantial was the use of employee referrals, and the court cannot assume that the pervasiveness of the recruiting method rose to the level of unlawful.

The second element in *Taylor* inquires as to the presence of an evident pattern of past discrimination. The *Taylor* court stated that racial statistics are an appropriate method of proving prima facie discrimination. The United States Supreme Court, subsequent to *Taylor,* held that when gross statistical disparities can be shown, they alone may, in a proper case, constitute prima facie proof of a pattern or practice of discrimination. *Teamsters v. United States,* 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977). In *Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1976), the Supreme Court stated that the proper comparison to be used in a disparate impact case is between the racial composition of the defendant whose hiring practices are being attacked and the racial composition of the qualified population in the relevant labor market. *Id.* at 308, 97 S.Ct. at 2741.

In the present case, the parties have stipulated to the relevant statistical evidence, as follows: Lady Baltimore, in 1981, had 85 blue-collar employees, 75 of whom were nonblacks, 6 of whom were known blacks, and 4 of whom were of unknown racial background. Thus, either $^6\!/_{85}$th (7.06%), $^7\!/_{85}$ (8.24%), $^8\!/_{85}$th (9.41%), $^9\!/_{85}$th

(10.59%), or $^{10}/_{85}$th (11.76%) of the employees were black, depending on the race of the 4 unknown employees. The racial composition of the relevant labor market was 15.9% black.

Once the relevant statistical evidence is determined, the next stage in the *Hazelwood* analysis is to compare the range of standard deviations produced by the alternative figures. The *Hazelwood* Court noted that a fluctuation of *more than two or three* standard deviations would undercut the hypothesis that hiring decisions were made randomly with respect to race, and would support the plaintiff's theory of race discrimination. *Hazelwood*, 433 U.S. at 322 n. 17, 97 S.Ct. at 2743 n. 17 (citing *Castaneda v. Portida*, 430 U.S. 482, 497 n. 17, 97 S.Ct. 1272, 1281 n. 17, 51 L.Ed.2d 498 (1976)).

This court finds that the explanation of "standard deviation" set forth in *Drayton v. City of St. Petersburg*, 477 F.Supp. 846, 858 (M.D.Fla.1979) is helpful in analyzing disparate impact. That court stated:

> The "standard deviation" is the square root of the product of the total number in the sample (the employee group under review) times the probability of selecting a qualified black person (the ratio of qualified blacks in the relevant labor market area) times the probability of selecting a non-black person (the ratio of the remaining population). If the difference between the expected value (the ratio of the qualified black persons in the relevant market area applied to the total number in the sample or employee group under review), and the observed value (the actual number of black persons in the employee group), is more than two or three times the size of the "standard deviation," then the disparity may be attributed to factors other than random or racially neutral selection procedures.

*Id.* at n. 22 (citing *Castaneda*, 430 U.S. at 496 n. 17, 97 S.Ct. at 1281 n. 17; *Hazel-*

*wood*, 433 U.S. at 311 n. 17, 97 S.Ct. at 2743 n. 17). Using this formula, with the total sample number of 85, the relevant black population of 15.9%, and the remaining non-black population of 84.1%, the standard deviation is 3.37. If the 4 unknown employees are excluded, leaving a sample of 81, the standard deviation is 3.29.*

Applying the above figures to the present case, the expected number of blacks in Lady Baltimore's work force would be 15.9% of 85, or 13.52 blacks (12.88 blacks in a work force of 81). The actual number was 6, thus producing a difference of 7.52 (6.88 with a sample of 81). This produces a fluctuation of 2.23 standard deviations (2.09 standard deviations for a sample of 81). These calculations compel this court to find that, as was stated in *Drayton*, the proffered statistical evidence "fails to demonstrate a gross disparity in the racial composition of the work force so as to raise an inference or establish a prima facie case of discrimination." *Drayton*, 477 F.Supp. at 858. Without a greater number of standard deviations in this relatively small sample, there is simply not enough statistical confidence to conclude that the results were not caused by chance, or to permit the statistics to establish an inference of discrimination. This is especially true in the context of a motion for summary judgment. The Supreme Court has stated that *more than* 2 or 3 standard deviations will support an inference. Under the circumstances of the present case, 2.23 standard deviations is too low if the spirit of the *Hazelwood* decision is to be honored. Moreover, the court does not know whether the 4 "unknown" employees of Lady Baltimore were black or non-black. The results above were calculated in a manner most favorable to the plaintiffs. However, the presence of blacks among these 4 would significantly alter the statistical evidence in the present case, due to the smallness of the sample size.

---

* In discrimination cases, this type of evidence is statistically sound when the sample size is at least 30 or more. *EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 650 (4th Cir. 1983), *rev'd on other grounds sub nom. Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 [104 S.Ct. 2794, 81 L.Ed.2d 718] (1984).

Even when a summary judgment motion is unopposed, the court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986). In the present case, even when viewed in a light most favorable to the *movant*, the evidence is inconclusive. The plaintiffs have simply failed to present this court with an adequate factual and statistical basis to support their motion. As the plaintiffs note, a policy or practice, such as word-of-mouth recruitment, that is facially neutral in its treatment of different groups but that in fact falls more harshly on one group than another and cannot be justified by business necessity, can be found unlawfully discriminatory using the disparate impact analysis under Title VII. *Williams v. Colorado Springs School District*, 641 F.2d 835, 839 (10th Cir.1981). Although the plaintiffs and the defendant company in this lawsuit have apparently stipulated that the company's recruitment practices had a disparate impact on the hiring of blacks, this court cannot simply allow such an acquiescence to constitute a violation of Title VII. Contrary to plaintiffs' belief, Lady Baltimore has not stipulated a prima facie violation of Title VII. The plaintiffs must establish their own prima facie case under the facts. The court cannot declare judgment for the plaintiffs based upon facts legally insufficient to establish the plaintiffs' case.

In the present case, the facts proffered by the plaintiffs and stipulated to by the defendant company do not establish a prima facie case. First, the evidence fails to show how substantially the company relied upon the potentially discriminatory practice of word-of-mouth recruiting. Second, the evidence is inconclusive on the number of blacks in the company's employment. The uncontroverted facts allow the possibility that as little as 7.06% or as great as 11.76% of the company's work force was black. This difference is very significant within the complex world of statistics. Finally, the statistics proffered by the plaintiffs, when viewed in light of the totality of circumstances set forth in plaintiffs' motion, fail to provide sufficient statistical probability for this court to afford an inference of discrimination. In a motion for summary judgment, when a plaintiff attempts to establish unlawful discrimination, under the disparate impact analysis, through the use of statistical evidence, the movant must not present the court with the incomplete facts proffered in the present case.

IT IS BY THE COURT THEREFORE ORDERED that plaintiffs' motion for summary judgment be denied.