**UNITED STATES of America,**
**Plaintiff,**

v.

**Donald W. DAWES; Phyllis C. Dawes; and David Larry Smith and Derek Dane Dawes as Trustees Plainsman Property Trust also known as Plainsman Property Company, Defendants.**

**No. 03–1132–JTM.**

United States District Court,
D. Kansas.

Sept. 23, 2004.

Eric F. Melgren, United States Attorney, /s/ Stephanie M. Page, Stephanie Page, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C.

### ORDER

MARTEN, District Judge.

This matter is before the court on the Motion for Summary Judgment of the plaintiff, the United States of America. The Government brings this civil action against the remaining defendants: 1) to reduce to judgment certain unpaid federal tax assessments made against Donald W. and Phyllis C. Dawes (hereafter "the Daweses"); 2) to set aside certain conveyances of real property as fraudulent against the United States; 3) to obtain determination that the Plainsman Property Trust also known as the Plainsman Property Co. is the nominee of the Daweses; and 4) to foreclose federal tax liens on real property described in the complaint. Since defendants did not oppose the Government's motion for summary judgment, the court finds the facts set forth in the Government's motion as uncontroverted. For the reasons set forth below, the court grants summary judgment for the Government.

### I. STANDARD

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained

in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The standard is somewhat modified in an unopposed motion for summary judgment. As this court has noted, "it is improper to grant a motion for a summary judgment simply because it is unopposed." *E.E.O.C. v. Lady Baltimore Foods, Inc.,* 643 F.Supp. 406, 407 (D.Kan.1986) (citing *Hibernia National Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985)). This will be the case where the movant fails to make a prima facie case for summary judgment. *In re Independent Clearing House Co.,* 77 B.R. 843, 877 n. 52 (D.Utah 1987) (citing *United States v. Crooksville Coal Co.,* 560 F.Supp. 141, 142 (S.D.Ohio 1982)). *See also* Fed.R.Civ.P. 56(e) advisory committee's notes, 1963 amendments ("[w]here

the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."). It is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law. *Lady Baltimore Foods,* 643 F.Supp. at 407. In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts. *Lady Baltimore Foods,* 643 F.Supp. at 407.

The summary judgment standard must also be read in conjunction with D. Kan. Rule 7.4 which instructs that a "failure to file a brief or response within the time specified... shall constitute a waiver of the right thereafter to file such brief or response." Further, if a "respondent fails to file a response within the time required...the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."

## II. FINDINGS OF FACT

As of May 3, 2004, the Government assessed that the Daweses owe $1,541,604.08 for federal income tax liabilities and interests for assessments beginning in 1982. The Government filed and maintained federal tax liens for the delinquent payments against property owned or owned by entities created by the Daweses in Sherman, Thomas, and Wallace Counties.

In 1985 and 1986, the Daweses began moving their property into three trusts in which close family members or the Daweses served as trustees or agents. With the help of David Larry Smith (Larry Smith), who, among other charges, is now serving a sentence for assisting in the preparation and presentation of false and fraudulent tax returns, the Daweses set up the trusts through Smith's company Peer Financial

Group. The three trusts are Evergreen Investment Company, the Plainsman Property Trust, and Remnant Company Trust. Each unincorporated business organizations ("UBOs") served a slightly different function.

## A. Evergreen Investment Company

The Daweses created the Evergreen Investment Company in 1985 or 1986 in which they held their vehicles and farm machinery. Initially, the Daweses transferred their property, including their house (Parcel 1) and farmland (Parcels 2–8), into the trust for no consideration. However, in 1986, they transferred these Parcels into the Plainsman Property Trust. The Daweses serve as trustees and agents for Evergreen Investment Company.

Evergreen Investment Company has a bank account in Goodland, Kansas, to which Derek Dawes, the Daweses' eldest son, and Kenneth R. Palmgren, Donald Dawes's cousin, have signatory authority. Expenses relating to vehicles, personal property taxes, insurance, tags and lease payments are paid from this account. The account receives deposits from the Remnant Company, another entity the Daweses created. Evergreen also shares a post office box with the Plainsman Property Trust.

## B. Plainsman Property Trust

In 1986, the Daweses created the Plainsman Property Trust to hold property. Bank records from 1991 indicate that Peer Financial Group with David Smith as its agent and Derek Dawes serve as trustees. Bank records also indicate that the Daweses were agents of Plainsman as to transactions related to a business checking account opened with Brewster National Bank (now Farmers Bank and Trust). This account also receives deposits from Remnant Company.

In 2001, the Daweses opened an account with Western State Bank in Goodland, Kansas, as legal agents of Plainsman. Kenneth Palmgren and Derek Dawes signed as "signer trustees." From this account, the trust pays for expenses related to the property it holds. This account also receives deposits from Remnant Company.

Although the record indicates Plainsman Property Co. paid taxes in 1999, 2000, and 2002 in Wallace, Sherman, and Thomas Counties, respectively, the Government notes that Plainsman never filed a tax return. The record does not indicate whether Palmgren or Derek Dawes received compensation for their services as trustees.

## C. Remnant Company

In 1986, the Daweses created the Remnant Company with the assistance of Larry Smith of Peer Financial Group. Smith and Derek Dawes serve as trustees. The Daweses are agents of Remnant and signatories on Remnant's bank account with Brewster National Bank (now Farmers Bank and Trust). Remnant receives deposits from the farm income.

In 2000, Remnant opened an account with Western State Bank in Goodland, Kansas, and gave Kenneth Palmgren and Derek Dawes signature authority. Signatures on Remnant's Deposit Agreement with Western State Bank indicate that Kenneth Palmgren had been added as a trustee. Checks written from this account went towards the Daweses' personal expenses such as store bills, utility bills, telephone bills and medical expenses, including health insurance. Derek Dawes admitted that at least some of these checks had been pre-signed so that his parents could fill them out and use as needed.

Remnant's bank account receives income from the crop income of Parcels 2–8. Internal Revenue Services records indicate that Remnants has never filed a tax return. The Daweses have not reported the farming income on their individual tax returns either.

## III. ANALYSIS

This action arises from the Government's claim for judgment against the Daweses for unpaid federal income tax liabilities and foreclosure of federal tax liens against real property in which the Daweses have an interest. The court finds in favor of the Government's motion for summary judgment on both counts.

### A. Validity of Tax Liens

As to the preliminary question of the tax liens, the court finds the federal tax liens are valid. In the late 1980s, the Daweses pled guilty to willful failure to file income taxes for tax years 1982 and 1983. The couple challenged these assessments in the U.S. Tax Court, but the court dismissed the case on December 1, 1993. To date, the Daweses have not paid the taxes they owed for tax years 1982 and 1983. The Daweses also reported but did not pay taxes for 1984, 1986, 1987, 1988 and 1990. Pursuant to 26 U.S.C. § 6321, the Government properly filed notices of federal tax liens against the Daweses and Plainsman Property Company as a nominee of the Daweses. Given the above facts, the Government has established valid tax liens to bring this action of foreclosure.

### B. Validity of Conveyances of Real Property

As to the validity of the conveyance of the Daweses' property, the court examines the Government's two arguments in turn. The Government first argues that the transfer of Parcels 1–8 was fraudulent and

must be set aside. In the alternative, the Government argues that Plainsman Property Company holds Parcels 1–9 as nominees of the Daweses.

### 1. Fraud in Conveyance of Parcels 1–8

The court finds the Daweses' conveyance of Parcels 1–8 to Plainsman Property Company must be set aside as fraudulent. Pursuant to § 6321, when a court deems a conveyance void under state law, the federal tax liens attach. Thus, the Daweses' property will be subject to the federal tax liens against them, and the Government may foreclose by sale of the property under 26 U.S.C. § 7403. *United States v. Ressler*, 433 F.Supp. 459, 463–65 (S.D.Fla. 1977), *aff'd* 576 F.2d 650 (5th Cir.1978).

In determining whether a transfer is fraudulent, the court must first look to state law. *Commissioner v. Stern*, 357 U.S. 39, 45, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958). Kansas law provides that a conveyance of land made with the "intent to hinder, delay or defraud creditors of their just and lawful debts or damages...shall be deemed utterly void and of no effect." Kan. Stat. Ann. § 33–102 (1980). Fraudulent conveyances are questions of fact and must be proven by clear and convincing evidence. *Mohr v. State Bank of Stanley*, 770 P.2d 466, 476, 244 Kan. 555, 566 (Kan. 1989); *Koch Eng'g Co. v. Faulconer*, 239 Kan. 101, 106, 716 P.2d 180 (Kan.1986). In *City of Arkansas City v. Anderson*, 243 Kan. 627, 762 P.2d 183 (1988), a Kansas court summarized the factors for determining a fraudulent conveyance including: 1) a relationship between the grantor and grantee; 2) the grantee's knowledge of litigation against the grantor; 3) insolvency of the grantor; 4) a belief on the grantee's part that the asset transferred by the grantor was the grantor's last asset subject to a Kansas execution; 5) inadequacy of consideration; and 6) consummation of

the transaction contrary to normal business procedures. *Id.* at. 184.

The Government may show a fraudulent conveyance for tax purposes by demonstrating that "the trust's originator retains control over the property or income placed in the trust, and does not change the way the property or income is treated." *United States v. Noske,* 117 F.3d 1053, 1059 (8th Cir.1997); *Paulson v. Commissioner,* 992 F.2d 789, 790 (8th Cir. 1993); *aff'g. per curiam* T.C. Memo.1991–58. The trust form will be ignored when the substance of transactions indicate that the grantor retains "unfettered powers of disposition." *Schulz v. Commissioner,* 686 F.2d 490, 495 (7th Cir.1982), *aff'g* T.C. Memo 1980–568.

The facts indicate that despite the ultimate transfer of all their property into the Plainsman Property Company, the Daweses retained control over their property much as they had done before. They ran the day-to-day operations on the property and paid their expenses from the three trust accounts they created. The designation of family members and Larry Smith as "trustees" to the Plainsman was only in name. Although the Daweses went to great pains to open bank accounts under the Plainsman's name and with the trustees' approval, they wrote checks freely for their personal and business expenses. There is little evidence of trustee oversight. The copiously-kept memos on their checks do not hide that the Plainsman trust was merely a way for the Daweses to shield themselves and their property from federal tax liens.

Further, the Daweses were aware of the assessments pending against them when they formed the Plainsman in 1986. They had not paid outstanding taxes for 1982 and 1983. In 1985 and 1986, the Daweses moved all their personal and real property into the three trusts rendering themselves insolvent. They received no consideration for these transfers although the Parcels have a value in excess of $700,000. They maintained no personal checking accounts and used the trust funds as needed and at their discretion. These facts taken together indicate that the Daweses created the Plainsman Property Company to avoid tax judgments. Thus, the court sets aside the fraudulent conveyance of Parcels 1–8 to Plainsman and finds the property may be subject to the Government's foreclosure for federal tax liens against the Daweses.

## 2. Plainsman as the Alter Ego or Nominee of the Daweses

In the alternative, the court finds that the Plainsman serves as the alter ego or nominee for the Daweses, thus subjecting Parcels 1–9 to the tax liens assessed against the Daweses.

Courts have recognized that the government may place liens on property held by a business entity as the alter ego or nominee of a taxpayer. *Towe Antique Ford Found. v. Internal Revenue Service,* 791 F.Supp. 1450, 1453 (D.Mont.1992), *aff'd,* 999 F.2d 1387 (9th Cir.1993). To determine whether a trust serves as a taxpayer's nominee, the court examines several factors including: 1) the taxpayer's control over the nominee and its assets; 2) the use of trust funds to pay taxpayer's personal expenses; 3) the relationship between the taxpayer and the nominee; 4) the lack of internal controls and the lack of nominee oversight of taxpayer's actions; and 5) the lack of consideration for transfers of property. *Shades Ridge v. U.S.,* 888 F.2d 725, 729 (11th Cir.1989); *Loving Saviour Church v. United States,* 728 F.2d 1085, 1086 (8th Cir.1984). The Tenth Circuit has noted that even when legal title may be held by others, a taxpayer may be found to be an equitable owner. *U.S. v.*

*Miller Bros. Construction Co.,* 505 F.2d 1031, 1036 (10th Cir.1974).

■■■ Based on the relevant factors, the court finds that the Daweses retained control over the nominee and its assets. As already noted, they freely used the trust funds for their personal expenses. There is no indication that they had other sources to pay for these personal expenses. They maintained no personal checking accounts for such expenses. The trustees exercised only superficial control and oversight of the Daweses' transactions. Additionally, the Daweses received no consideration for the transfer of their property. As a result, the court must find that the Plainsman served as the nominee of the Daweses. As such, the property is subject to the Government's foreclosure action.

The Government makes no allegations as to a fraudulent conveyance of Parcel 9. However, under the alter ego or nominee theory, Parcel 9 is also subject to the Daweses' tax liens because the Plainsman Property Trust holds the property as a nominee for the Daweses. Thus, all Parcels, including Parcel 9, is subject to the tax liens against the Daweses.

IT IS ACCORDINGLY ORDERED this 20th day of September, 2004, that the court grants the Government's Motion for Summary Judgment against Defendants (Dkt. No. 31).

## AMENDED JUDGMENT

IT IS ORDERED AND ADJUDGED in accordance with the Order filed September 21, 2004, that plaintiff's motion for summary judgment (Dkt. No. 31) is granted. Judgment is entered as follows:

1. Judgment is entered in favor of the United States against Donald W. and Phyllis C. Dawes for the unpaid assessed balance of their 1982, 1983, 1984, 1986, 1987, 1988 and 1990 federal income taxes, including accrued interest and other accrued statutory additions, in the amount of $1,541,604.08, plus interest allowable by law from May 3, 2004, through the date of payment or other satisfaction (28 U.S.C. § 1961(c)(1), 26 U.S.C. § 6621).

2. The federal tax liens that arose from the federal income tax assessments against Donald W. and Phyllis C. Dawes for the years 1982, 1983, 1984, 1986, 1987, 1988 and 1990 attached at the time of assessment to all property and rights to property held by Donald W. and Phyllis C. Dawes at the time of assessment, including Parcels 1—9, as described in the Complaint.

3. The transfers of Parcels 1—8 to Plainsman Property Company were fraudulent conveyances as to the United States and are set aside, thus, Parcels 1–8 are subject to the Government's foreclosure action of the federal tax liens against the Daweses.

4. Plainsman Property Company serves as the alter ego or nominee for the Daweses, thus, subjecting Parcels 1—9 to the tax liens assessed against the Daweses and the Government's foreclosure action.

5. The federal tax liens on Parcels 1—9 are hereby foreclosed upon to help satisfy the Daweses' federal income tax liabilities. A separate order of sale enforcing this judgment against Parcels 1—9 will issue.