Howard WEBB, Plaintiff,

v.

The KROGER COMPANY, Defendant.

Civ. A. No. 84–2424.

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 12, 1985.

Theodore R. Dues, Jr., Dues & Tyree, Charleston, W. Va., for plaintiff.

William W. Booker, Love, Wise & Woodroe, Charleston, W. Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the Defendant's motion for summary judgment. With its motion, the Defendant has filed a memorandum in support thereof, exhibits, affidavits and excerpts from depositions. The Plaintiff, apparently for personal reasons, has not responded. Despite the technical default of the Plaintiff, the Court discerns a genuine issue of material fact in the record before it. Thus, the Court denies the Defendant's motion.

### I. *Background*

Howard Webb, a black man, was employed as a truck driver by Kroger Company at its West Virginia distribution center in Kanawha City, West Virginia. Webb was hired by Kroger on May 24, 1977. He was discharged on March 5, 1984. His nearly seven year tenure with the company appears to have been stormy to say the least. Webb was discharged by Kroger in 1979 for refusing to drive an allegedly unsafe truck. He pursued that discharge through his union's collective bargaining agreement's grievance plan and was eventually vindicated. He was then reinstated with full back pay and seniority.

The record reflects that Webb began having attendance problems in 1980. In that year he was absent on twelve different occasions for a total of 54 days. Because of his poor attendance for that year, Webb received an oral warning on October 20, 1980. Kroger points out that in 1981 Webb was absent on sixteen different occasions and missed a total of 54 days of work. In regard to this absenteeism, he was given oral warnings on April 6, 1981, July 14, 1981, July 29, 1981, September 8, 1981, and October 12, 1981. On June 9, 1981, Kroger gave Webb a written letter of warning about his absenteeism. The letter warned him that continued absences could result in discipline, including discharge. The warn-

ing came to fruition on November 30, 1981, when Kroger suspended Webb pending permanent discharge from employment. Webb thereupon pursued his rights under the grievance plan and was able to get the discharge reduced to a disciplinary suspension and final warning notice. The reinstatement was without back pay. Webb also indicated in his deposition that he was told not to appear before the grievance committee again because of absenteeism.

Webb's poor attendance record, for whatever reason, continued in 1982. He missed work on eleven separate occasions, for a total of 51 days. Oral warnings were issued on March 23, 1982, June 22, 1982, and September 28, 1982. The pattern was repeated again in 1983; Webb absented himself from work on thirteen separate occasions and missed a total of 40 days of work. Kroger issued oral warnings about the attendance problems on April 11, 1983, June 20, 1983, September 9, 1983, and November 7, 1983. Webb also received on December 16, 1983, a written warning, similar to the earlier letter, informing him that his attendance would have to improve or that he would be subject to further discipline, including discharge.

With the written warning hanging over his head, Webb was absent from work on January 9, 1984; he received an oral warning. He was again absent on February 3, 1984; he received a three-day disciplinary suspension. After his absence of March 2, 1984, Webb was discharged from employment.

After the occasion of his discharge, Webb filed a complaint with the West Virginia Human Rights Commission. He later withdrew that complaint and filed suit in this Court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and of 42 U.S.C. § 1981. Both statutory claims sound in race discrimination.

## II. *Discussion*

### A. *Exhaustion of State Administrative Remedies.*

■ Kroger argues that Webb has not exhausted his state administrative reme-

dies. It points out that he filed his complaint with the West Virginia Human Rights Commission on May 20, 1984, and withdrew the same on July 18, 1984. Title 42 U.S.C. § 2000e–5(c) provides that "No charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under state or local law unless such proceedings have been earlier terminated ...." Kroger submits that the state agency must have before it the state claim for a period of sixty days, and that this period of consideration is a jurisdictional prerequisite to bringing a federal suit. *See Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Albano v. General Adjustment Bureau, Inc.,* 478 F.Supp. 1209 (S.D.N.Y.1979). By Kroger's calculation, Webb's complaint was withdrawn from the Human Rights Commission 59 days after it was submitted. Hence, it argues, the jurisdictional requirement was not met.

■ The Court is reluctant to base its decision on this procedural argument by Kroger. First, it must be noted that this argument is addressed only to Webb's Title VII claim; there is no requirement under Section 1981 for exhaustion of administrative remedies. *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir.1975). Second, with respect to the technical requirement that a party not file a charge with the EEOC until sixty days after the state proceedings have commenced, the Court notes that more than sixty days had expired before Webb proceeded with this action. Furthermore, insofar as this time constraint has been interpreted as requiring the state agency to consider the complaint for sixty days, Webb appears to have complied. Although Kroger concludes that the West Virginia Human Rights Commission considered the matter for "only" 59 days before Webb withdrew his complaint, a more equitable computation would include the day on which Webb filed his complaint with the agency, that being the day upon which the agency could first begin "considering" the complaint. Thus, the agency

can be said to have had the complaint before it for sixty days. Moreover, the Court disagrees with Kroger's bald assertion that the state agency did not have a bona fide opportunity to investigate and conciliate this complaint. Accordingly, the Court finds that the jurisdictional prerequisites have been complied with by the Plaintiff, Webb.

B. *Prima Facie Case.*

 Turning to Kroger's argument on the merits of Webb's complaint, the Court finds that Kroger's recitation of the law is well reasoned and generally correct. Nonetheless, in arguing that Webb's record of absences had placed him in a classification apart from white workers,[1] Kroger passes over alleged instances of disparate treatment in computing Webb's attendance record which could have pushed him into a higher gradation. One such instance would be the requirement allegedly imposed upon Webb to submit a doctor's excuse for absences which whites could claim without similar restrictions. Hence, Kroger's reliance upon the teaching of *Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.1985), is misplaced.[2]

III. *Conclusion*

 If the issue before the Court was the reasonableness of Webb's termination considering his prior attendance record, the result here would more than likely be different. The issue, however, is one of discrimination. Perhaps the facts developed at trial will fail to support Webb's allegations. At this point, however, the Court finds the existence of a genuine issue of fact as to whether Webb was subjected to disparate treatment which caused him to accrue an objectively dismal attendance record. This conclusion does not bring into question whether Kroger's absenteeism policy was incorrectly applied to Webb or whether that policy was based upon race. Rather the issue of fact is whether the policy was discriminatorily applied to Webb as a black employee as compared to Kroger's white employees. Kroger asserts that it was not; Webb stands ready to prove that it was. Accordingly, Kroger's motion for summary judgment is hereby ORDERED denied.

---

1. Kroger's argument is directed toward a case in which a plaintiff seeks to prove his case by circumstantial evidence under a modified *McDonnel Douglas* model. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As the Fourth Circuit observed in *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir.1985), such a prima facie model is only one method of using circumstantial evidence, and, of course, does not address the situation where direct evidence of discriminatory intent is offered. Assuming, *ar-guendo*, that Webb would opt to use the *McDonnell Douglas* model, the Court believes Kroger's argument to overlook initial discriminatory treatment which could render objective classifications delusory.

2. The *Moore* court held that a black policeman, who was not similarly situated to white coworkers, could not claim that his more severe discipline was circumstantial evidence of discrimination.